## BEHRENS *v.* PELLETIER

No. 94–1244.   Argued November 7, 1995—Decided February 21, 1996

SCALIA, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, KENNEDY, SOUTER, THOMAS, and GINSBURG, JJ., joined. BREYER, J., filed a dissenting opinion, in which STEVENS, J., joined, *post*, p. 314.

*Lenard G. Weiss* argued the cause for petitioner. With him on the briefs was *Christine A. Murphy.*

*Cornelia T. L. Pillard* argued the cause for the United States as *amicus curiae* urging reversal. With her on the brief were *Solicitor General Days, Assistant Attorney General Hunger, Deputy Solicitor General Bender, Barbara L. Herwig,* and *Richard A. Olderman.*

*Samuel T. Rees,* by appointment of the Court, 515 U. S. 1101, argued the cause for respondent. With him on the brief was *Michael J. White.*\*

*\*Louise H. Renne, Dennis Aftergut, G. Scott Emblidge, Ronald R. Ball, David J. Erwin, J. Kenneth Brown, Norman Herring, Edward J. Foley, Charles J. Williams, James K. Hahn, Katherine J. Hamilton, Gregory P. Priamos, Edward J. Cooper, Rene Auguste Chouteau, Mark G. Sellers, David B. Brearley,* and *Robert E. Murphy* filed a brief for the City and County of San Francisco as *amicus curiae* urging reversal.

JUSTICE SCALIA delivered the opinion of the Court.

In *Mitchell* v. *Forsyth*, 472 U. S. 511 (1985), we held that a district court's rejection of a defendant's qualified-immunity defense is a "final decision" subject to immediate appeal under the general appellate jurisdiction statute, 28 U. S. C. § 1291. The question presented in this case is whether a defendant's immediate appeal of an unfavorable qualified-immunity ruling on his motion to dismiss deprives the court of appeals of jurisdiction over a second appeal, also based on qualified immunity, immediately following denial of summary judgment.

## I

In 1983, South Coast Savings and Loan Association, a new institution, applied to the Federal Home Loan Bank Board (FHLBB or Board) for the approval necessary to obtain account insurance from the Federal Savings and Loan Insurance Corporation (FSLIC).[1] Under FHLBB regulations, approval of new institutions was to be withheld if their "financial policies or management" were found to be "unsafe" for any of various reasons, including "character of the management." 12 CFR § 571.6(b) (1986). Accordingly, when FHLBB approved South Coast for FSLIC insurance in March 1984, it imposed a number of requirements, including the condition that South Coast "provide for employment of a qualified full-time executive managing officer, subject to approval by the Principal Supervisory Agent"—FHLBB's term for the president of the regional Home Loan Bank when operating in his oversight capacity on behalf of FHLBB. Record, Exh. B, Resolution No. 84–164, ¶ 10(p) (Mar. 29, 1984). The Board's resolution also required that, for a period of three years, any change in South Coast's chief management position be approved by FHLBB. *Ibid.*

---

[1] FHLBB, FSLIC, and the regulatory scheme described in this opinion no longer exist, having been eliminated by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 103 Stat. 183.

Shortly after obtaining FHLBB's conditional approval, South Coast was succeeded in interest by Pioneer Savings and Loan Association, another new institution. Pioneer named respondent Pelletier as its managing officer, subject to FHLBB consent, which Pioneer sought in mid-May 1985. Only a few weeks earlier, however, on April 23, 1985, FHLBB had declared insolvent Beverly Hills Savings and Loan Association, where respondent had at one time held a senior executive position. An inquiry by FSLIC pointed to potential misconduct by high-level management of the failed institution, which ultimately became the subject of an FSLIC lawsuit against several Beverly Hills officers, including respondent.

The FSLIC suit had not yet been filed at the time Pioneer sought the Board's consent to hire respondent; but FSLIC's pending investigation into Beverly Hills' collapse caused petitioner Behrens, the FHLBB "Supervisory Agent" then responsible for monitoring Pioneer's operations, to write Pioneer on May 8, 1986, withholding approval and advising that respondent be replaced. On receipt of the letter Pioneer asked respondent to resign and, when he refused, fired him.

Three years later, in 1989, respondent brought suit in federal court, naming petitioner as defendant in a complaint that included *Bivens* damages claims for two alleged constitutional wrongs. See *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971). Respondent charged, first, that petitioner's action in writing a letter that had effectively discharged him from his post at Pioneer, in summary fashion and without notice or opportunity to be heard, violated his right to procedural due process. Second, he claimed that he had been deprived of substantive due process by petitioner's alleged interference with his "clearly established and Constitutionally protected property and liberty rights . . . to specific employment and to pursue his profession free from undue governmental interference." First Amended Complaint ¶ 38, reprinted in App. 7, 16. The complaint alleged

that petitioner's letter, along with other, continuing efforts to harm respondent's reputation, had cost respondent not only his position at Pioneer, but also his livelihood within the savings and loan industry. The complaint also contained other claims—against petitioner and against the Federal Home Loan Bank of San Francisco (petitioner's immediate employer), FHLBB, and the United States; none of these is relevant to the present appeal.

Petitioner filed a motion to dismiss or, in the alternative, for summary judgment. With regard to the *Bivens* claims, he asserted a statute-of-limitations defense and claimed qualified immunity from suit on the ground that his actions, taken in a governmental capacity, "d[id] not violate clearly established statutory or constitutional rights." *Harlow* v. *Fitzgerald*, 457 U. S. 800, 818 (1982). The District Court ruled in favor of petitioner on the statute-of-limitations ground and therefore dismissed the procedural due process *Bivens* claim, and the substantive due process *Bivens* claim to the extent it related to petitioner's letter and respondent's loss of employment at Pioneer. It refused, however, to dismiss respondent's suit "to the extent [it was] based on other alleged subsequent acts of defendan[t] preventing and continuing to prevent [respondent] from securing employment." *Pelletier* v. *Federal Home Loan Bank of San Francisco*, No. CV 89–969 (CD Cal., Oct. 5, 1989), reprinted in App. 27–28. The court also denied petitioner's summary judgment motion, without prejudice, on the ground that it was premature given the lack of discovery.

Petitioner immediately appealed the District Court's implicit denial of his qualified-immunity defense regarding the remaining *Bivens* claim. The Court of Appeals entertained the appeal, notwithstanding its interlocutory nature, holding that "a denial of qualified immunity is an appealable 'final' order under the test set forth in *Cohen* v. *Beneficial Indust. Loan Corp.*, 337 U. S. 541 (1949) . . . , regardless of whether that denial takes the form of a refusal to grant a defendant's

motion to dismiss or a denial of summary judgment." *Pelletier* v. *Federal Home Loan Bank of San Francisco*, 968 F. 2d 865, 870 (CA9 1992). It said in dictum, however, that a defendant claiming qualified immunity could not "take advantage of the several *opportunities* for immediate appeal afforded him by bringing repeated pretrial appeals," and that "[o]ne such interlocutory appeal is all that a government official is entitled to and all that we will entertain." *Id.*, at 870–871. On the merits of the appeal, the court rejected the argument that petitioner enjoyed qualified immunity because he had not violated any "clearly established right." It said that the question whether respondent had a constitutionally protected property interest in his Pioneer employment (subject, as it was, to regulatory approval) was not properly before the court, since the claims relating specifically to his discharge had been dismissed as time barred. *Id.*, at 871–872. (The Court of Appeals noted in dictum, however, *id.*, at 869, n. 6, that the District Court had applied an unduly short limitations period.) With respect to the claimed deprivation of post-Pioneer employment, the court held that the "nebulous theories of conspiracy" set out in respondent's complaint—although "insufficient to survive a motion for summary judgment"—made out a proper *Bivens* claim. 968 F. 2d, at 872–873.

Upon remand, the District Court reversed its earlier statute-of-limitations ruling in light of the Court of Appeals' dictum, and reinstated the claims relating to employment at Pioneer. After discovery, petitioner moved for summary judgment on qualified-immunity grounds, contending that his actions had not violated any "clearly established" right of respondent regarding his employment at Pioneer or elsewhere. The District Court denied the motion with the unadorned statement that "[m]aterial issues of fact remain as to defendant Behrens on the *Bivens* claim." *Pelletier* v. *Federal Home Loan Bank of San Francisco*, No. CV 89–0969 (CD Cal., Sept. 6, 1994), reprinted in App. to Pet. for Cert.

5a. Petitioner filed a notice of appeal, which, on respondent's motion, the District Court certified as frivolous. In an unpublished order, the Ninth Circuit dismissed the appeal "for lack of jurisdiction." *Pelletier* v. *Federal Home Loan Bank of San Francisco*, No. 94–56507 (CA9, Nov. 17, 1994), reprinted in App. to Pet. for Cert. 1a. We granted certiorari, 514 U. S. 1035 (1995).

## II

Section 1291 of Title 28, U. S. C., gives courts of appeals jurisdiction over "all final decisions" of district courts, except those for which appeal is to be had to this Court. The requirement of finality precludes consideration of decisions that are subject to revision, and even of "fully consummated decisions [that] are but steps towards final judgment in which they will merge." *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541, 546 (1949). It does not, however, bar review of all prejudgment orders. In *Cohen*, we described a "small class" of district court decisions that, though short of final judgment, are immediately appealable because they "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Ibid.* See also *Puerto Rico Aqueduct and Sewer Authority* v. *Metcalf & Eddy, Inc.*, 506 U. S. 139, 142–145 (1993) (citing *Coopers & Lybrand* v. *Livesay*, 437 U. S. 463, 468 (1978)). The issue in the present case is the extent to which orders denying governmental officers' assertions of qualified immunity come within the *Cohen* category of appealable decisions.

As set forth in *Harlow* v. *Fitzgerald*, 457 U. S. 800 (1982), the qualified-immunity defense "shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *id.*, at 818 (citing *Procunier* v. *Navarette*, 434 U. S.

555, 565 (1978)). *Harlow* adopted this criterion of "objective legal reasonableness," rather than good faith, precisely in order to "permit the defeat of insubstantial claims without resort to trial." 457 U. S., at 819, 813. Unsurprisingly, then, we later found the immunity to be "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal [immunity] question." *Mitchell* v. *Forsyth*, 472 U. S., at 526. And, as with district-court rejection of claims to other such entitlements distinct from the merits, see, *e. g., Puerto Rico Aqueduct, supra*, at 145–146 (Eleventh Amendment immunity); *Abney* v. *United States*, 431 U. S. 651, 662 (1977) (right not to be subjected to double jeopardy), we held that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U. S. C. § 1291 notwithstanding the absence of a final judgment." *Mitchell, supra*, at 530. See also *Johnson* v. *Jones*, 515 U. S. 304, 311–312 (1995).

While *Mitchell* did not say that a defendant could appeal from denial of a qualified-immunity defense more than once,[2] it clearly contemplated that he could *raise* the defense at successive stages:

> "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evi-

---

[2] Interestingly, however, *Mitchell* itself dealt with the second of two interlocutory appeals on immunity claims. See 472 U. S., at 515–519. Neither the Court of Appeals nor this Court assigned any significance to the successive aspect of the second appeal.

dence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." 472 U. S., at 526 (citation omitted).

Thus, *Mitchell* clearly establishes that an order rejecting the defense of qualified immunity at *either* the dismissal stage *or* the summary judgment stage is a "final" judgment subject to immediate appeal. Since an unsuccessful appeal from a denial of dismissal cannot possibly render the later denial of a motion for summary judgment any *less* "final," it follows that petitioner's appeal falls within § 1291 and dismissal was improper.

Indeed, it is easier to argue that the denial of summary judgment—the order sought to be appealed here—is the *more* "final" of the two orders. That is the reasoning the First Circuit adopted in holding that denial of a motion to dismiss on absolute-immunity grounds was not "final" where the defendant had stated that, if unsuccessful, he would later seek summary judgment on qualified-immunity grounds: "Since the district court has not yet determined whether [the defendant] has qualified immunity, and that he will *have* to stand trial, its decision is not an appealable collateral order." *Kaiter* v. *Boxford*, 836 F. 2d 704, 707 (1988). The problem with this approach, however, is that it would logically bar *any* appeal at the motion-to-dismiss stage where there is a possibility of presenting an immunity defense on summary judgment; that possibility would cause the motion-to-dismiss decision to be not "final" as to the defendant's right not to stand trial. The First Circuit sought to avoid this difficulty by saying that the defendant could render the motion-to-dismiss denial final by waiving his right to appeal the summary judgment denial. See *id.*, at 708. But quite obviously, eliminating the ability to *appeal* the second order does not eliminate the possibility that the second order will vindicate the defendant's right not to stand trial, and therefore

does not eliminate the supposed reason for declaring the first order nonfinal.

The source of the First Circuit's confusion was its mistaken conception of the scope of protection afforded by qualified immunity. *Harlow* and *Mitchell* make clear that the defense is meant to give government officials a right, not merely to avoid "standing trial," but also to avoid the burdens of "such *pretrial* matters as discovery . . . , as '[i]nquiries of this kind can be peculiarly disruptive of effective government.'" *Mitchell, supra,* at 526 (emphasis added) (quoting from *Harlow, supra,* at 817). Whether or not a later summary judgment motion is granted, denial of a motion to dismiss is conclusive as to this right. We would have thought that these and other statements from *Mitchell* and *Harlow* had settled the point, questioned by JUSTICE BREYER, see *post,* at 317, that this right is important enough to support an immediate appeal. If it were not, however, the consequence would be, *not* that only one pretrial appeal could be had in a given case, as JUSTICE BREYER proposes, but rather, that there could be *no* immediate appeal from denial of a motion to dismiss but only from denial of summary judgment. That conclusion is foreclosed by *Mitchell,* which unmistakably envisioned immediate appeal of "[t]he denial of a defendant's motion for dismissal or summary judgment on the ground of qualified immunity." 472 U. S., at 527.

The Court of Appeals in the present case, in the first of its two decisions, rested its "one-appeal" pronouncement upon the proposition that resolving the question of entitlement to qualified immunity "should not require more than one judiciously timed appeal." *Pelletier,* 968 F. 2d, at 871. It did not explain how this proposition pertains to the question of finality, but we suppose it could be argued that a category of appeals thought to be needless or superfluous does not raise a claim of right "too important to be denied review," as our *Cohen* finality jurisprudence requires, see 337 U. S., at 546.

In any event, the proposition is not sound. That one appeal on the immunity issue may not be enough is illustrated by the history of respondent's claims for loss of employment at Pioneer in the present case. Because these claims had initially been dismissed as time barred, the Court of Appeals refused to decide (and thus evidently regarded as an open question) whether one who holds his job subject to regulatory approval can assert a constitutionally cognizable expectation of continued employment. See *Pelletier, supra,* at 871–872. Thus, the question whether petitioner was entitled to immunity on these claims was not presented to *any* court until petitioner's summary judgment motion—and, by operation of the Ninth Circuit's one-appeal rule, has never been addressed by an appellate court.

That is assuredly an unusual set of circumstances, but even in a case proceeding in a more normal fashion resolution of the immunity question may "require more than one judiciously timed appeal," because the legally relevant factors bearing upon the *Harlow* question will be different on summary judgment than on an earlier motion to dismiss. At that earlier stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for "objective legal reasonableness." On summary judgment, however, the plaintiff can no longer rest on the pleadings, see Fed. Rule Civ. Proc. 56, and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the *Harlow* inquiry. It is no more true that the defendant who has unsuccessfully appealed denial of a motion to dismiss has no need to appeal denial of a motion for summary judgment, than it is that the defendant who has unsuccessfully *made* a motion to dismiss has no need to *make* a motion for summary judgment.[3]

---

[3] JUSTICE BREYER suggests that the second of two pretrial qualified-immunity appeals does not come within *Cohen*'s class of immediately ap-

The Court of Appeals expressed concern that a second appeal would tend to have the illegitimate purpose of delaying the proceedings. See 968 F. 2d, at 870–871. Undeniably, the availability of a second appeal affords an opportunity for abuse, but we have no reason to believe that abuse has often occurred. To the contrary, successive pretrial assertions of immunity seem to be a rare occurrence.[4] Moreover, if and when abuse does occur, as we observed in the analogous context of interlocutory appeals on the issue of double jeopardy, "[i]t is well within the supervisory powers of the courts of appeals to establish summary procedures and calendars to weed out frivolous claims." *Abney*, 431 U. S., at 662, n. 8. In the present case, for example, the District Court appropriately certified petitioner's immunity appeal as "frivolous" in light of the Court of Appeals' (unfortunately erroneous) one-appeal precedent. This practice, which has been embraced by several Circuits, enables the district court to re-

---

pealable final orders because it is insufficiently "separable" from the claim raised on the first appeal, see *post*, at 316. But the *Cohen* "separability" component asks whether the question to be resolved on appeal is "conceptually distinct from the merits of the plaintiff's claim." *Mitchell* v. *Forsyth*, 472 U. S. 511, 527 (1985). The appropriate comparison, then, is between the decision sought to be reviewed and the claim underlying the action itself—not between the decision and any previous appeal, as JUSTICE BREYER suggests. And again, *Mitchell* clearly states that a denial of qualified immunity, whether on a motion for dismissal or summary judgment, is an "appealable 'final decision.'" *Id.*, at 530.

[4] We are aware of only five reported cases—*Mitchell* itself, *Nelson* v. *Silverman*, 999 F. 2d 417 (CA9 1993), *Abel* v. *Miller*, 904 F. 2d 394 (CA7 1990), *Francis* v. *Coughlin*, 891 F. 2d 43 (CA2 1989), and the present case—in which Courts of Appeals have been twice asked to review successive pretrial assertions of immunity. See *Abel*, *supra*, at 396 ("Paucity of precedent [on successive interlocutory appeals] must reflect the forbearance of public officials rather than lack of opportunity"); *Kaiter* v. *Boxford*, 836 F. 2d 704, 706 (CA1 1988) ("[I]n every case we have found which permitted interlocutory review of an immunity ruling, the defendant's entire claim to immunity was raised in a single proceeding").

tain jurisdiction pending summary disposition of the appeal, and thereby minimizes disruption of the ongoing proceedings. See, *e. g.*, *Chuman* v. *Wright*, 960 F. 2d 104, 105 (CA9 1992); *Yates* v. *Cleveland*, 941 F. 2d 444, 448–449 (CA6 1991); *Stewart* v. *Donges*, 915 F. 2d 572, 576–577 (CA10 1990); *Apostol* v. *Gallion*, 870 F. 2d 1335, 1339 (CA7 1989). In any event, the question before us here—whether there is jurisdiction over the appeal, as opposed to whether the appeal is frivolous—must be determined by focusing upon the category of order appealed from, rather than upon the strength of the grounds for reversing the order. "Appeal rights cannot depend on the facts of a particular case." *Carroll* v. *United States*, 354 U. S. 394, 405 (1957). See also *Digital Equipment Corp.* v. *Desktop Direct, Inc.*, 511 U. S. 863, 868 (1994). As we have said, an order denying qualified immunity, to the extent it turns on an "issue of law," *Mitchell*, 472 U. S., at 530, is immediately appealable.

### III

Our rejection of the one-interlocutory-appeal rule does not dispose of this case. Respondent proposes two other reasons why appeal of denial of the summary judgment motion is not available. First, he argues that no appeal is available where, even if the District Court's qualified-immunity ruling is reversed, the defendant will be required to endure discovery and trial on matters separate from the claims against which immunity was asserted. Respondent reasons that a ruling which does not reach all the claims does not "conclusively determin[e] the defendant's claim of right not to *stand trial*," *id.*, at 527, and thus the order denying immunity cannot be said to be "final" within the meaning of *Cohen*.

It is far from clear that, given the procedural posture of the present case, respondent would be entitled to the benefit of the proposition for which he argues; but we will address the proposition on its merits. The Courts of Appeals have

almost unanimously rejected it,[5] and so do we. The *Harlow* right to immunity is a right to immunity *from certain claims,* not from litigation in general; when immunity with respect to those claims has been finally denied, appeal must be available, and cannot be foreclosed by the mere addition of other claims to the suit. Making appealability depend upon such a factor, particular to the case at hand, would violate the principle discussed above, that appealability determinations are made for classes of decisions, not individual orders in specific cases. Apart from these objections in principle, the practical effect of respondent's proposal would be intolerable. If the district court rules erroneously, the qualified-immunity right not to be subjected to pretrial proceedings will be eliminated, so long as the plaintiff has alleged (with or without evidence to back it up) violation of one "clearly established" right; and both that and the further right not to be subjected to trial itself will be eliminated, so long as the complaint seeks injunctive relief (for which no "clearly established" right need be alleged).

Second, respondent asserts that appeal of denial of the summary judgment motion is not available because the denial rested on the ground that "[m]aterial issues of fact remain." This, he contends, renders the denial unappealable under last Term's decision in *Johnson* v. *Jones,* 515 U. S., at 313–318. That is a misreading of the case. Denial of summary judgment often includes a determination that there are controverted issues of material fact, see Fed. Rule Civ. Proc.

---

[5] See, *e. g., McLaurin* v. *Morton,* 48 F. 3d 944, 949 (CA6 1995); *Green* v. *Brantley,* 941 F. 2d 1146, 1148–1151 (CA11 1991) (en banc); *Di Martini* v. *Ferrin,* 889 F. 2d 922, 924–925 (CA9 1989), cert. denied, 501 U. S. 1204 (1991); *Young* v. *Lynch,* 846 F. 2d 960, 961–963 (CA4 1988); *DeVargas* v. *Mason & Hanger Silas Mason Co.,* 844 F. 2d 714, 717–718 (CA10 1988); *Musso* v. *Hourigan,* 836 F. 2d 736, 742, n. 1 (CA2 1988); *Scott* v. *Lacy,* 811 F. 2d 1153, 1153–1154 (CA7 1987); *De Abadia* v. *Izquierdo Mora,* 792 F. 2d 1187, 1188–1190 (CA1 1986); *Tubbesing* v. *Arnold,* 742 F. 2d 401, 403–404 (CA8 1984). Only the Third Circuit holds otherwise. See *Prisco* v. *United States Dept. of Justice,* 851 F. 2d 93, 95–96, cert. denied, 490 U. S. 1089 (1989).

56, and *Johnson* surely does not mean that *every* such denial of summary judgment is nonappealable. *Johnson* held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case; if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly "separable" from the plaintiff's claim, and hence there is no "final decision" under *Cohen* and *Mitchell*. See 515 U. S., at 313–318. *Johnson* reaffirmed that summary judgment determinations *are* appealable when they resolve a dispute concerning an "abstract issu[e] of law" relating to qualified immunity, *id.*, at 317—typically, the issue whether the federal right allegedly infringed was "clearly established," see, *e. g., Mitchell, supra,* at 530–535; *Davis* v. *Scherer,* 468 U. S. 183, 190–193 (1984).

Here the District Court's denial of petitioner's summary judgment motion necessarily determined that certain conduct attributed to petitioner (which was controverted) constituted a violation of clearly established law. *Johnson* permits petitioner to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the *Harlow* standard of "objective legal reasonableness." This argument was presented by petitioner in the trial court, and there is no apparent impediment to its being raised on appeal. And while the District Court, in denying petitioner's summary judgment motion, did not identify the particular charged conduct that it deemed adequately supported, *Johnson* recognizes that under such circumstances "a court of appeals may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." *Johnson, supra,* at 319. That is the task now facing the Court of Appeals in this case.

The judgment of the Court of Appeals is reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BREYER, with whom JUSTICE STEVENS joins, dissenting.

I do not agree with the Court's holding that those asserting a defense of qualified immunity are entitled, as a matter of course, to more than one interlocutory appeal. Rather, in my view, the law normally permits a single interlocutory appeal, and not more than one such appeal, from denials of a defendant's pretrial motions to dismiss a case on grounds of qualified immunity. The "collateral order" doctrine's basic rationale, this Court's precedents, and several practical considerations lead to this conclusion.

I

This Court's basic rationale for permitting an interlocutory appeal of a "collateral order" recognizes that interlocutory appeals are the exception, not the rule. Congress, with statutory exceptions not directly relevant here, has authorized appeals from "final" orders. 28 U. S. C. § 1291. In that way,

"Congress . . . , by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration [and] . . . the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment." *Cobbledick* v. *United States*, 309 U. S. 323, 325 (1940).

Judges have nonetheless created what is, in effect, a non-statutory exception, authorizing a special set of interlocutory

appeals, where a trial court's interlocutory order is a "collateral order" that satisfies the statutory term "final" for purposes of §1291. See *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541, 545–547 (1949). The trial court's interlocutory order is "collateral" (and "final"), however, only where it meets certain requirements. It must (1) "conclusively determine [a] disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) "be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand* v. *Livesay*, 437 U. S. 463, 468 (1978).

These requirements explain *why* the courts have created the "collateral order" exception. The "effective unreviewability" requirement means that failure to review the order on appeal *now* may cause a litigant permanent harm. The "conclusive determination" requirement means that appellate review *now* is likely needed to avoid that harm. The "separability" requirement means that review *now* will not likely force an appellate court to consider the same (or quite similar) questions more than once. *Johnson* v. *Jones*, 515 U. S. 304, 311 (1995). Taken together, these requirements, as set forth in the Court's cases, see, *e. g., ibid.; Midland Asphalt Corp.* v. *United States,* 489 U. S. 794, 799 (1989); *Gulfstream Aerospace Corp.* v. *Mayacamas Corp.,* 485 U. S. 271, 276 (1988), help pick out a class of orders where the error-correcting benefits of immediate appeal likely outweigh the costs, delays, diminished litigation coherence, and waste of appellate court time potentially associated with multiple appeals. See, *e. g., Johnson, supra,* at 309–311; R. Posner, Economic Analysis of Law 585–587 (4th ed. 1992).

In *Mitchell* v. *Forsyth,* 472 U. S. 511 (1985), the Court applied this rationale to a District Court order denying a claim of qualified immunity. The Court concluded that the District Court order, by sending the case to trial, could cause the litigant what (in terms of the immunity doctrine's basic trial-avoiding purpose) would amount to an important harm.

See *id.*, at 526–527. Post-trial appellate review would come too late to avoid that harm. *Ibid.* And, the legal issue (where *purely* legal, see *Johnson, supra,* at 313–318) would often prove "separate" enough from the more basic substantive issues in the case to avoid significant duplication of appellate court time and effort. See 472 U. S., at 527–529; but see *id.*, at 545–550 (Brennan, J., dissenting). Hence, the "collateral order" doctrine's basic rationale supported interlocutory appeal.

That same rationale, however, does not support *two* pretrial interlocutory appeals, the first from a denial of a motion to dismiss a complaint, the second from a later, postappeal, denial of a motion for summary judgment. Consider the "separability" requirement. Both orders satisfy the literal terms of that requirement because the qualified immunity issues they resolve are both "separate," in equal measure, from the merits of the plaintiff's claim. See *ante,* at 309–310, n. 3. But the reasoned principles and purposes underlying the "separability" requirement are not served by a rule that permits both orders to be appealed because the issues they raise are not normally "separate" one from the other. Rather, they will often involve quite similar issues, likely presented to different appellate court panels, thereby risking the very duplication and waste of appellate resources that the courts intended the "separability" requirement to avoid. See 15A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3911, pp. 333–334 (2d ed. 1992) (hereinafter Wright & Miller).

Similarly, given the law's promise of *one* pretrial interlocutory appeal, a litigant's need for a second is much less pressing. The single interlocutory appeal can avoid much of, though not all of, the harm that *Mitchell* found. And, the remaining harm, as I shall next discuss, is not of a kind that the law considers *important* enough to justify an interlocutory appeal.

## II

This Court's precedents justify one interlocutory appeal, but not more, in the ordinary qualified immunity case. When it initially set forth the "collateral order" exception, the Court said that it applied to "that small class" of orders that determine claims of right "too *important* to be denied [immediate] review." *Cohen, supra,* at 546 (emphasis added). In subsequent cases, and again today, the Court has reiterated that, to qualify for interlocutory appeal, the interest being asserted must be an *important* one. See, *e. g., ante,* at 308; *Digital Equipment Corp.* v. *Desktop Direct, Inc.,* 511 U. S. 863, 878–879 (1994) (*Cohen* inquiry "simply cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement"); *Coopers & Lybrand, supra,* at 468 (disputed question must "resolve an important issue"); *Richardson-Merrell Inc.* v. *Koller,* 472 U. S. 424, 436 (1985); see also *Lauro Lines s.r.l.* v. *Chasser,* 490 U. S. 495, 502 (1989) (SCALIA, J., concurring) ("The importance of the right asserted has always been a significant part of our collateral order doctrine"). Because one pretrial appeal would normally prove sufficient to protect a government defendant's qualified immunity interest in not standing trial, the right to take multiple interlocutory appeals will normally protect only the defendant's additional interest in avoiding such *pre*trial burdens as discovery. Thus, the question, as JUSTICE SCALIA has pointed out, is whether this antidiscovery interest is "*sufficiently* important to overcome the policies militating against interlocutory appeals." *Id.,* at 503 (emphasis added). The relevant precedent indicates that, in the context of qualified immunity, it is not.

For one thing, the Court, when considering the kinds of orders that warrant interlocutory appeal, has identified as "sufficiently important" interests that are considerably more important than the ordinary interest in avoiding discovery.

See, *e. g., Stack* v. *Boyle,* 342 U. S. 1 (1951) (interest in avoiding imprisonment; Excessive Bail Clause, U. S. Const., Amdt. 8); *Abney* v. *United States,* 431 U. S. 651 (1977) (interest in avoiding trial; Double Jeopardy Clause, U. S. Const., Amdt. 5); *Helstoski* v. *Meanor,* 442 U. S. 500 (1979) (interest in avoiding trial; Speech or Debate Clause, U. S. Const., Art. I, § 6); *Puerto Rico Aqueduct and Sewer Authority* v. *Metcalf & Eddy, Inc.,* 506 U. S. 139 (1993) (interest in avoiding trial; Eleventh Amendment immunity, U. S. Const., Amdt. 11).

For another thing, the Court has often said that the trouble, expense, and possible embarrassment associated with unnecessary litigation (interests rather like the qualified immunity antidiscovery interest) do not justify interlocutory appeal. See, *e. g., Digital Equipment Corp., supra,* at 881–882 (no interlocutory review of orders refusing to enforce a settlement agreement); *Lauro Lines, supra,* at 499 (no interlocutory review of orders refusing to enforce a forum selection clause); *Van Cauwenberghe* v. *Biard,* 486 U. S. 517, 524 (1988) (no interlocutory review of orders refusing to dismiss a civil suit on grounds of immunity from civil process or *forum non conveniens*).

Further, until now litigants have not been able routinely to vindicate, through immediate appeal, a legal right to avoid discovery, 15B Wright & Miller § 3914.23, at 123–130, even where the Constitution provides that antidiscovery right, see, *e. g., Maness* v. *Meyers,* 419 U. S. 449, 458–461 (1975) (no interlocutory appeal of order refusing to quash subpoena for materials that arguably violated subpoenaed party's Fifth Amendment privilege against self-incrimination). Although a litigant can sometimes appeal an adverse discovery ruling, to do so, the litigant typically must disobey the discovery order and then appeal a resulting citation for contempt of court. *Church of Scientology of Cal.* v. *United States,* 506 U. S. 9, 18, n. 11 (1992); *Maness, supra,* at 460–461; *United*

*States* v. *Ryan,* 402 U. S. 530, 532–533 (1971); *Cobbledick* v. *United States,* 309 U. S., at 326–330; 15B Wright & Miller § 3914.23, at 140–155. But see *United States* v. *Nixon,* 418 U. S. 683, 691 (1974) (allowing President Nixon to appeal from a discovery order without first incurring a contempt citation, because "traditional contempt avenue to immediate appeal" would be "peculiarly inappropriate"). This "disobedience and contempt" requirement (somewhat analogous to a one-appeal limitation here) works, in part, because it "encourages reconsideration both by the party resisting discovery and by the party seeking discovery, and in part because it tends to limit appeals to issues that are both important and reasonably likely to lead to reversal." 15B Wright & Miller § 3914.23, at 154; see also *Pennsylvania* v. *Ritchie,* 480 U. S. 39, 50, n. 8 (1987) (disobedience and contempt procedure "rests on an implicit assumption that unless a party resisting discovery is willing to risk being held in contempt, the significance of his claim is insufficient to justify interrupting the ongoing proceedings").

It seems highly anomalous for the law to deny a routine interlocutory appeal where the Constitution of the United States protects an antidiscovery interest, but to permit a routine appeal where the legal doctrine of qualified immunity protects a similar interest. Yet, today's holding will either create just such an anomaly, or, as is more likely, it will generate many new interlocutory appeals as lower courts apply its principle wherever the Constitution, or other important legal doctrine, offers a litigant special antidiscovery protection.

The majority suggests that the importance of the antidiscovery interest protected by qualified immunity has already been "settled" by such precedents as *Mitchell* v. *Forsyth,* 472 U. S. 511 (1985), and *Harlow* v. *Fitzgerald,* 457 U. S. 800 (1982). See *ante,* at 308. These cases do say that the qualified immunity defense, in its modern formulation,

was meant, in part, "to protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government.'" *Anderson* v. *Creighton,* 483 U. S. 635, 646, n. 6 (1987) (quoting *Harlow, supra,* at 817). But the Court's decision in *Mitchell* (that district court orders denying qualified immunity are immediately appealable) was concerned primarily with preserving defendants' immunity from *trial,* not discovery. See 472 U. S., at 525 ("At the heart of the issue before us is the question whether qualified immunity . . . is in fact an entitlement not to stand trial"); see also *Van Cauwenberghe, supra,* at 524 ("The critical question, following *Mitchell,* is whether 'the essence' of the claimed right is a right not to stand trial"). The Court has never before suggested, much less "settled," that the government defendant's antidiscovery interest—independent of his interest in avoiding trial—is so important that it must be safeguarded by interlocutory appellate review.

Finally, this Court and its individual Members have, in recent years, cautioned against expanding the class of orders eligible for interlocutory appeal. See, *e. g., Digital Equipment Corp.* v. *Desktop Direct, Inc.,* 511 U. S., at 868 (opinion of SOUTER, J.) ("[T]he 'narrow' exception should stay that way and never be allowed to swallow the general rule"); *Gulfstream Aerospace Corp.* v. *Mayacamas Corp.,* 485 U. S., at 292 (SCALIA, J., concurring) ("[The Court's] finality jurisprudence is sorely in need of further limiting principles, so that *Cohen* appeals will be, as we originally announced they would be, a 'small class [of decisions] . . . too important to be denied review'"); *Richardson-Merrell Inc.* v. *Koller,* 472 U. S., at 440 (opinion of O'CONNOR, J.) ("[W]e decline to 'transform the limited exception carved out in *Cohen* into a license for broad disregard of the finality rule imposed by Congress in § 1291'") (quoting *Firestone Tire & Rubber Co.* v. *Risjord,* 449 U. S. 368, 378 (1981)). Caution would seem especially appropriate where the Court is considering not one interlocutory appeal in a single case, but two.

## III

Several important practical considerations also favor limiting the number of interlocutory qualified immunity appeals to one. The majority finds the necessary special harm in the fact that the qualified immunity doctrine protects public officials against discovery as well as trial; and it finds "separability" in the fact that a postdiscovery summary judgment motion likely asks a legal question that is conceptually distinct from the legal question posed by a prediscovery motion to dismiss a complaint. But, given this rationale, can one limit the number of appeals to just one or two? Would it not, in principle, justify several appeals where discovery, proceeding in stages, continuously turns up new facts, or where, after the close of the plaintiff's case, an immediate appeal would avoid the litigation burden of presenting an entire defense case.

Still, even two pretrial appeals risk what Justice Story called "very great delays, and oppressive expenses," *Canter* v. *American Ins. Co.*, 3 Pet. 307, 318 (1830), which can "ossify civil rights litigation," *Abel* v. *Miller*, 904 F. 2d 394, 396 (CA7 1990) (Easterbrook, J.). The defendant in the present case, for example, so far has spent more than four years (of seven since the complaint's filing) fighting, through interlocutory appeal, a case that he might well have won more quickly and easily either in the trial court or on appeal from an initially adverse judgment on the merits. Cf. *Pelletier* v. *Federal Home Loan Bank of San Francisco*, 968 F. 2d 865, 872–873 (CA9 1992) (expressing doubt that plaintiff's complaint could survive a summary judgment motion). I concede that every added interlocutory appeal will serve the interests that underlie qualified immunity to some extent, for each will help a government defendant terminate meritless litigation. But each added appeal likely would serve those interests to an ever-diminishing degree while posing an ever-increasing threat to the appearance of evenhanded justice in civil rights cases. See *Coopers & Lybrand* v. *Livesay*, 437 U. S., at 476

(no immediate appeal of prejudgment order denying class certification, in part because such appeals would "operat[e] only in favor of plaintiffs").

Further, as mentioned above, the majority's rationale threatens added appeals, not simply in qualified immunity cases, but wherever an immunity-type doctrine (or any other important legal rule) seeks to protect litigants from trial. See, *e. g.*, *Puerto Rico Aqueduct and Sewer Authority* v. *Metcalf & Eddy, Inc.*, 506 U. S. 139 (1993) (Eleventh Amendment immunity); *Nixon* v. *Fitzgerald*, 457 U. S. 731 (1982) (absolute immunity); *Abney* v. *United States*, 431 U. S. 651 (1977) (double jeopardy guarantee against successive prosecutions). It thereby threatens busy appellate courts with added numbers of essentially similar, if not repetitive, appeals, at a time when overloaded dockets threaten the federal appellate system. See Remarks of Chief Justice William H. Rehnquist, Tenth Annual Judicial Conference of the United States Court of Appeals for the Federal Circuit, 146 F. R. D. 256, 257 (Apr. 30, 1992) ("One of the chief needs of our generation is to deal with the current appellate capacity crisis in the Federal Courts of Appeals. Few could argue about the existence of such a crisis, born of spiraling federal filings and an increased tendency to appeal District Court decisions"); Judicial Conference of the United States, Long Range Plan for the Federal Courts 132 (Dec. 1995) ("[I]f conditions seriously deteriorate in the courts of appeals, it may be necessary to consider some limitations on the right to appeal"). See generally T. Baker, Rationing Justice on Appeal: The Problems of the U. S. Courts of Appeals 31–51 (1994).

Finally, as a practical matter, where the benefits of immediate appellate review predominate in an individual case, a party still can seek court leave to appeal immediately under 28 U. S. C. § 1292(b) (permitting immediate review of nonfinal orders that involve a controlling and controversial question of law, the appellate resolution of which "may materially

advance the ultimate termination of the litigation"). This Court has frequently observed that the availability of § 1292(b) review counsels against expanding other judicial exceptions to the rule against piecemeal appeals. See, *e. g.*, *Swint* v. *Chambers County Comm'n*, 514 U. S. 35, 45–47 (1995); *Digital Equipment Corp.*, 511 U. S., at 883; *Van Cauwenberghe* v. *Biard*, 486 U. S., at 529–530; *Richardson-Merrell Inc.*, 472 U. S., at 435; *Firestone Tire & Rubber Co.*, 449 U. S., at 378, n. 13; *Coopers & Lybrand, supra*, at 474–475, and n. 27; see also *Parkinson* v. *April Industries, Inc.*, 520 F. 2d 650, 658–660 (CA2 1975) (Friendly, J., concurring). We should be especially reluctant to identify new categories of "collateral orders" now that Congress has, by adding 28 U. S. C. § 2072(c) to the Rules Enabling Act, "designat[ed] . . . the rulemaking process as the way to define or refine when a district court ruling is 'final' and when an interlocutory order is appealable." *Swint, supra*, at 48.

## IV

In sum, purpose, precedent, and practicality all argue for one interlocutory qualified immunity appeal per case and no more. I believe that the Court, following *Mitchell*, should simply hold that qualified immunity interests, while important enough to justify one interlocutory appeal, are not important enough to justify two. It is not necessary to argue about whether the defendant "waived" a second appeal, see *Kaiter* v. *Boxford*, 836 F. 2d 704, 708 (CA1 1988); nor, since the matter turns on "importance," not conclusiveness, need the Court decide just how the timing of an interlocutory appeal affects the "finality" of the trial court's denial of a motion to dismiss the complaint. See *ante*, at 307–308. Rather, a defendant asserting qualified immunity would remain free, as at present, to appeal from a denial of a motion to dismiss the complaint, or the defendant could wait, move for summary judgment, and appeal the motion's denial, but he could not do both—either because the interest asserted

in a *first* pretrial appeal is insufficiently important if the possibility remains of a *second* pretrial appeal, or because the interest asserted in a *second* pretrial appeal is insufficiently important if there has already been a *first* pretrial appeal.

As I said, precedent permits this result because, under that precedent, the *importance* of the interest (an interlocutory appeal is needed to protect) is one necessary requirement for application of the technical legal labels "final" or "collateral order." More importantly, meaning in law depends upon an understanding of purpose. Law's words, however technical they may sound, are not magic formulas; they must be read in light of their purposes, if we are to avoid essentially arbitrary applications and harmful results. For the reasons I have set forth, precedent, read in this way, does more than permit—it requires—a single interlocutory appeal. I therefore dissent.