UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WILBERT WESLEY LEWIS,
          *Plaintiff-Appellee,*

v.

W. G. BOUCHER, personally and in
his official capacity as a Police
Officer for the City of Roanoke,
          *Defendant-Appellant,*

and

CITY OF ROANOKE; ATLAS GASKINS,
personally and in his official
capacity as Chief of Police for the
City of Roanoke,
          *Defendants.*

No. 01-1584

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CA-00-566-7)

Argued: December 3, 2001

Decided: May 9, 2002

Before WIDENER, MICHAEL, and KING, Circuit Judges.

Affirmed in part and dismissed in part by unpublished per curiam
opinion.

## COUNSEL

**ARGUED:** Jim Harold Guynn, Jr., GUYNN LAW OFFICES, Roanoke, Virginia, for Appellant. Lawrence Ulysses Davidson, III, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Shortly after midnight on December 31, 1999, Officer William G. Boucher of the Roanoke City Police Department shot Wilbert Wesley Lewis during a traffic stop. Lewis suffered serious abdominal injuries, and he brought this excessive force claim under 42 U.S.C. § 1983 against Boucher, Atlas Gaskins (Roanoke's Chief of Police), and the City of Roanoke. The district court granted summary judgment to Gaskins and the City. Officer Boucher also moved for summary judgment on the ground of qualified immunity, but the court denied his motion. The court explained that Lewis had raised a genuine issue of material fact about whether Boucher shot Lewis in the back or the stomach. A jury's resolution of this question, the court concluded, was "indispensable in deciding whether a reasonable officer could have believed that the use of force against Lewis was objectively reasonable." *Lewis v. City of Roanoke*, 2001 WL 418724, at *3 (W.D. Va. March 28, 2001). Boucher filed this interlocutory appeal, arguing mainly that the district court erred by ruling that a reasonable jury could find that Boucher shot Lewis in the back. We dismiss this portion of Boucher's appeal because a district court's determination about the sufficiency of a plaintiff's evidence in a § 1983 case is not immediately appealable. If Boucher's brief is read charitably, he also raises the purely legal question of whether the district court erred by concluding that Boucher would not be entitled to qualified immunity if a jury found that he shot Lewis in the back during a routine traffic

stop. We do have jurisdiction to consider this issue, and we affirm the district court's resolution of it.

## I.

Lewis filed his § 1983 claim in the United States District Court for the Western District of Virginia on July 14, 2000. During discovery three distinct stories emerged about the shooting and the events that led up to it. Because the factual differences between these accounts are crucial to the case, we set them out in some detail.

Lewis presented the following account of the shooting in a deposition he gave on February 9, 2001. Late in the evening of December 30, 1999, Lewis borrowed his sister's car to drive to the Roanoke bus station so that he could buy a ticket for a trip he planned to take a few days later. Lewis found that the bus station was closed, and he decided to stop at a convenience store to buy cigarettes before returning to his sister's house. While on the way to the store, Lewis noticed that he was being closely followed by a police patrol car. Officer Boucher, the patrol car's driver, turned on his blue lights to signal Lewis to pull over. There were no parking places available in the immediate area, so Lewis continued to drive for a block and a half until he found a lighted place to park on Patton Avenue. Lewis parked his car, and Boucher pulled in behind him. Lewis quickly got out of the car, neglecting to place the car's transmission in park or to set the parking brake. He left the door of the car open and the engine running. Lewis raised his hands in the air and turned toward the police car, finding that Officer Boucher was standing beside his patrol car with his police dog at his side and his gun drawn and pointed at Lewis. (At a different point in his deposition, Lewis said that when he got out of the car, he immediately placed his hands on top of the car.) Boucher told Lewis to get on the ground, but Lewis did not comply because he has bad knees. Lewis admits, however, that he did not tell Boucher about his bad knees and that he did not respond to Boucher's commands in any way. According to Lewis, Boucher seemed "excited" and "was treating [Lewis] like [he] was a dangerous, harsh criminal." At this point, Lewis's car began to roll forward slightly. He does not recall whether his car hit the car in the next parking space. Lewis turned and reached into the car with his right hand and right foot, putting his foot on the brake and shifting the transmission of the

car into park. About half of his body was inside the car as he did this. Lewis then got back out of the car, keeping his hands in full view at all times. Lewis stood facing Boucher with his hands at eye level and his palms open. He made no threatening movements or verbal threats toward Boucher. Lewis admits, however, that he was afraid of Boucher's police dog and that he "might have" dropped his right hand to about hip level at one point in order to ward off the dog, though he does not remember doing so. Boucher then shot Lewis in the stomach. Lewis asked Boucher why Boucher had shot him, but Boucher did not answer.

Officer Boucher provided a significantly different story in an affidavit dated February 19, 2001. (Boucher has not been deposed.) According to Boucher, he was on patrol late on the night of December 30, 1999, when he saw a car with no lights on. (Lewis says that one of the headlights on the car was not working, but that the rest of the car's lights were on.) Boucher began following Lewis's car to see whether it would turn its lights on, and Boucher soon turned on his blue lights. At this point, Lewis accelerated and ran a red light. (Lewis contends that the light was green and that he did not increase his speed after Boucher turned on his blue lights.) Boucher pursued Lewis for several blocks until Lewis locked up his brakes and swerved to the right side of the road. Lewis immediately got out of the car. Boucher believed that Lewis was going to flee, so he got out of his patrol car with his police dog at his side. Lewis got back into his car and drove it forward, hitting a parked car. Lewis then got back out of the car, and Boucher says it looked as though Lewis "stopped to reach for something" as he did so. Boucher dropped to one knee, holding his dog with his left hand and pointing his gun at Lewis with his right. Lewis turned towards Boucher but kept his right hand hidden behind his back. Boucher gave Lewis at least five commands to show his hands or to get down on the ground, but Lewis did not comply. After the last command, Lewis "lunged forward jerking his right arm out and straight towards [Boucher]." Boucher then shot Lewis because he believed that Lewis had a weapon and posed a threat to Boucher's life. It is undisputed that Lewis did not have a gun or any other kind of weapon on his person or in the car.

Although these two versions of the shooting differ in many respects, both versions indicate that Boucher shot Lewis in the stom-

ach while Lewis was facing Boucher. The third version of the shooting changes this critical fact. On March 2, 2001, Dr. Bruce A. Long, the surgeon who operated on Lewis the night of the shooting, signed an affidavit stating that he had believed since the time of the surgery that Lewis had been shot in the back rather than from the front. He based this conclusion on his observations during the surgery that the cone-shaped pattern of damage to Lewis's abdomen increased in size from back to front, and he explained that wounds typically enlarge as they pass through solid tissue.[1] Dr. Long was later deposed, and he opined "to a reasonable degree of medical certainty that the entrance [of the bullet that struck Lewis] was from behind, and the exit from in front." Lewis filed an affidavit on March 6, 2000, which presented a version of the shooting that stands in some tension with the account given in his February 9 deposition. In the affidavit Lewis claimed that when he first got out of the car, he placed his hands "on the top of the car in full view." (He had given a similar account in his deposition, but he had not explained the inconsistency between this account and his claim that he stood facing Boucher with his hands in the air when he first got out of the car.) Lewis then said that after he got back into the car to prevent the car from rolling, he "got out of the car a second time and was attempting to place [his] hands again on top of the car." It was at this point, Lewis said, that he "heard a pop like a gunshot and felt pain in [his] stomach."

Boucher, Chief Gaskins, and the City moved for summary judgment. In an order and memorandum opinion dated March 28, 2001, the district court granted Gaskins's and the City's motions but denied Boucher's motion on the ground that the presence of disputed issues of material fact prevented the court from concluding that Boucher was entitled to qualified immunity at the summary judgment stage. The district court explained that "the factual determination of whether Boucher shot Lewis in the front or in the back is indispensable in deciding whether a reasonable officer could have believed that the use of force against Lewis was objectively reasonable. . . . Dr. Long's opinion [that Lewis was shot in the back] is inconsistent with Bou-

---

[1]Lewis's medical records indicate that the bullet entered Lewis from the front, but Dr. Long testified that these records were prepared by an intern who simply recorded what Lewis told him about the manner in which he had been shot.

cher's account of events, especially Boucher's statement that Lewis lunged forward toward him, and creates a genuine issue of material fact for a jury to decide." *Lewis*, 2001 WL 418724 at *3. Boucher filed this interlocutory appeal, claiming that we have jurisdiction under 28 U.S.C. § 1291.

## II.

A district court's order denying a government official's qualified immunity defense is an immediately appealable final decision under 28 U.S.C. § 1291 to the extent that the appeal concerns "not which facts the parties might be able to prove, but . . . whether or not certain given facts showed a violation of 'clearly established' law." *Johnson v. Jones*, 515 U.S. 304, 311 (1995) (citations omitted). Thus, § 1291 permits a government official to claim in an interlocutory appeal that he is entitled to qualified immunity because "all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the . . . standard of 'objective legal reasonableness' [set out in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)]." *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). On the other hand, "determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case." *Id.* As we explained in *Winfield v. Bass*, 106 F.3d 525 (4th Cir. 1997) (en banc), "we possess no jurisdiction over a claim that a plaintiff has not presented enough evidence to prove that the plaintiff's version of events actually occurred, but we have jurisdiction over a claim that there was no violation of clearly established law accepting the facts as the district court viewed them." *Id.* at 530. With these jurisdictional considerations in mind, we now turn to the specifics of Officer Boucher's appeal.

Boucher devotes nearly all of his brief to the argument that the district court erred by ruling that Dr. Long's affidavit and deposition testimony created a genuine issue of material fact about whether Boucher shot Lewis from the front or from the back. He urges us to adopt the Virginia rule that "a party is bound by his own testimony and cannot rise any higher than that testimony." Brief of Appellant W.G. Boucher at 9 (citing *Massie v. Firmstone*, 114 S.E. 652, 656 (Va. 1922)). Accordingly, Boucher would have us rule that Lewis is bound by his initial deposition testimony that Boucher shot him from

the front and that the district court should not have denied Boucher summary judgment on the basis of Dr. Long's testimony. Whether or not this argument has merit, Boucher fails to recognize that under *Behrens*, *Johnson*, and *Winfield* we simply have no jurisdiction to consider it at this interlocutory stage. Boucher asks us to review the district court's determination that the evidence was sufficient to create a triable issue of fact about whether Lewis was shot in the back, but as we have just explained, "determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case." *Behrens*, 516 U.S. at 313. *See also Winfield*, 106 F.3d at 530 (stating that the plaintiffs had asserted in part that "the evidence presented . . . was insufficient to raise a genuine issue of material fact necessitating a trial . . . and to that extent, we lack jurisdiction pursuant to § 1291 to consider it"). Consequently, we dismiss the bulk of Boucher's appeal for want of jurisdiction.

### III.

Under *Winfield* we do have jurisdiction to address a government official's purely legal argument that, even accepting the facts as the district court viewed them, the official is entitled to qualified immunity because his conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Here, this means that we have jurisdiction over Officer Boucher's appeal to the extent he argues that the district court should have granted his summary judgment motion because he did not violate Lewis's clearly established rights even if he shot Lewis in the back. In the final two pages of his brief, Boucher appears to raise this argument when he claims that whether Lewis was shot from the front or the back is not a material fact for summary judgment purposes. We briefly address the merits of this argument.

In denying Boucher's summary judgment motion, the district court necessarily ruled that in the light of factual findings that could be made by a reasonable jury, Boucher would not be entitled to qualified immunity because a reasonable officer would have known that shooting Lewis was an unconstitutional use of excessive force. We can decide the correctness of the court's legal ruling on qualified immu-

nity only if we know which facts it believed that a reasonable jury could find. This requirement is unproblematic when the district court has fully specified the facts it assumed for purposes of its legal ruling on the qualified immunity issue. However, where the district court fails to fully specify the facts it assumed, we may have to review the record to determine "what facts the district court, in the light most favorable to the nonmoving party, likely assumed." *Johnson*, 515 U.S. at 319. We explained in *Winfield* that the proper way to decide what the district court "likely assumed" is to "review the materials submitted to the district court to determine what the record, viewed in the light most favorable to the nonmoving party, discloses." *Winfield*, 106 F.3d at 533.

Here, the district court explicitly stated that a reasonable jury could find that Boucher shot Lewis in the back, but it did not fully set forth the other facts it assumed to be supported by the summary judgment record when it rejected Boucher's qualified immunity defense. We have therefore undertaken the inquiry mandated by *Winfield* in order to identify the facts that the district court likely assumed in making its qualified immunity ruling. We conclude that, viewed in the light most favorable to Lewis, the evidence in the summary judgment record would allow a reasonable jury to conclude that Lewis was pulled over for a minor traffic violation (driving with a headlight out); that Lewis was completely unarmed; that in the moments before he was shot, Lewis kept his hands visible in compliance with Officer Boucher's request "to show [Boucher] his hands or to get down on the ground;" that Lewis did not threaten Boucher physically or verbally; and that Boucher issued no verbal warning before he shot Lewis. Along with the fact that Boucher shot Lewis in the back, these are the facts the district court likely assumed in its summary judgment ruling. They provide the factual basis for our review of the district court's legal conclusion that Boucher was not entitled to qualified immunity on Lewis's excessive force claim.

Assuming this factual basis, we have no difficulty in concluding that the district court correctly denied Boucher's motion for summary judgment on the ground of qualified immunity. Under the Supreme Court's decision in *Graham v. Connor*, 490 U.S. 386 (1989), we decide excessive force claims by determining whether the force employed was objectively reasonable under all the circumstances,

including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The district court likely assumed that a jury could find that the crime at issue was a minor traffic offense, that Lewis was not attempting to flee, and that Lewis posed no immediate threat to Boucher when he was shot in the back.[2] On these facts any reasonable officer would have known that the use of deadly force was excessive. Accordingly, we conclude that to the extent we have jurisdiction over this appeal, the district court's order denying Boucher's summary judgment motion on grounds of qualified immunity must be affirmed.

## IV.

For the foregoing reasons, we dismiss Officer Boucher's appeal to the extent that it seeks to challenge the district court's rulings on the

---

[2]Boucher suggests in his brief that even taking the facts in the light most favorable to Lewis, Boucher's decision to fire was prompted by Lewis's gesture of moving his right hand from eye level to hip level and that "[i]n the admittedly short time that elapsed between Lewis's threatening gesture, Boucher's decision to shoot, and pulling the trigger, Lewis may well have had time to spin and face away from Boucher." Appellant Boucher's Brief at 15. Accordingly, Boucher argues that he could have acted reasonably even if he shot Lewis in the back. There are at least two obvious problems with this argument. First, Lewis only said in his deposition that he "might have" dropped his hand to ward off the dog, but he did not remember doing so. A reasonable jury could choose to believe that Lewis never made this gesture. This is particularly true when Boucher's own account of Lewis' actions (that Lewis whipped his right hand from behind his back and lunged toward Boucher) is markedly different. Second, there is nothing in the record from either Lewis or Boucher to support the theory that Lewis suddenly spun away from Boucher in the instant before he was shot. Perhaps a reasonable jury *could* draw this inference, but surely a reasonable jury would not be required to draw it. In short, we believe that in the circumstances of this case a jury concluding that Boucher shot Lewis in the back could reasonably infer from this fact that Lewis did not pose an immediate threat to Boucher's safety.

sufficiency of Lewis's evidence to raise genuine issues of material fact. We have jurisdiction over Boucher's appeal to the extent that he argues that the district court erred in denying him qualified immunity even if he shot Lewis in the back, and we affirm the district court's ruling on that issue.

*AFFIRMED IN PART; DISMISSED IN PART*