

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-29-1999

# Torres v. United States

Precedential or Non-Precedential:

Docket 99-1024

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Torres v. United States" (1999). *1999 Decisions.* Paper 333.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/333

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 29, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1024

JUAN ANGEL TORRES; ROSA MARIA DOMINGUEZ; and
ROSA MARIA TORRES, a minor, by her parents and
natural guardians Juan Angel Torres and Rosa Maria
Dominguez

v.

UNITED STATES OF AMERICA; DRUG ENFORCEMENT
ADMINISTRATION; MATTHEW DONAHUE; MARTIN
CAPLAN; MAUREEN KELLY; JOSEPH CAPONE; and
JONATHAN COHEN

Matthew Donahue; Martin Caplan; Maureen Kelly; Joseph
Capone; and Jonathan Cohen,

      Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 97-5804)
District Judge: Honorable Ronald L. Buckwalter

Argued November 4, 1999

BEFORE: BECKER, Chief Judge, and GREENBERG
and CUDAHY,* Circuit Judges

(Filed: December 29, 1999)

_____

* Honorable Richard D. Cudahy, Senior Judge of the United States Court
of Appeals for the Seventh Circuit, sitting by designation.

David W. Ogden
Acting Assistant Attorney General
Susan Shinkman
Office of the United States Attorney
Michael R. Stiles
United States Attorney
Barbara L. Herwig
Katherine S. Gruenheck (argued)
Appellate Staff
United States Department of Justice
Civil Division, Appellate Staff
601 D Street, N.W.
Washington, DC 20530-0001

 Attorneys for Appellants

Richard Edmund Patton (argued)
2729 River Road
New Hope, PA 18938

 Attorney for Appellees

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

A. Factual Background

This matter comes on before this court on appeal from the district court's order partially denying appellants' motion seeking summary judgment on qualified immunity grounds. The appellants are Drug Enforcement Administatration ("DEA") agents who applied for a search warrant for the appellees' residence and executed the warrant the next day. The issues on appeal relate to the execution of the warrant. The search was an aspect of an extensive DEA investigation into a large cocaine distribution ring reputedly run by Geraldo Nieves. During the investigation, the DEA secured the cooperation of Blake O'Farrow, who had been a participant in the Nieves ring. O'Farrow informed DEA Special Agent Matthew Donahue in

2

September and November 1996, and again in January 1997, that Nieves was using a house at 3936 North Fifth Street in Philadelphia for storing, cutting, and bagging cocaine.

Based on the information obtained from O'Farrow, as well as other information secured during the investigation of the Nieves ring, Donahue prepared a probable cause affidavit and submitted it to a magistrate judge on January 30, 1997. That day, the magistrate judge signed a warrant authorizing a search of "the property known as 3936 N. 5th Street, Philadelphia, PA" for "[c]ocaine, packaging materials, dilutents [sic], plastic packaging slips, heat sealer, scales, and a vice [sic]."

At approximately 6:00 a.m. on the next day, DEA Agents Martin Caplan, Maureen Kelly, Joseph Capone, and Jonathan Cohen went to 3936 North Fifth Street to execute the warrant.[1] Donahue, however, did not go to the premises with the other agents. The occupants of the house were asleep when the agents arrived but appellee Rosa Maria Dominguez awoke to the sound of metal rattling. She went back to sleep only to reawaken to the sound of knocking and the agents' voices identifying themselves. Appellee Juan Angel Torres, who was sleeping in the same room, awoke and looked out the window where he saw people wearing DEA jackets. Dominguez (who put on a robe) and Torres (who wrapped himself in a towel) then went downstairs and looked out a ground floor window. Torres attempted to signal to the agents that Dominguez would open the door, but they nevertheless broke through the door with a battering ram.

The agents entered the home, pointed their guns at Torres and Dominguez, and ordered them to lie on the floor. The agents placed Torres but not Dominguez in handcuffs. The agents asked whether there were any weapons in the house, and Torres told them the location of two firearms in his bedroom. After he had been on the floor for about five minutes, Torres, still clad in his towel, was

_____

1. The factual record relating to the execution of the warrant derives largely from the appellees' depositions as the appellees did not depose the agents.

3

helped to the living room couch. Dominguez then was permitted to attend to the couple's two children upstairs. The agents did not point their guns at anyone after the initial entry.

The agents searched the entire premises. In their deposition testimony, Torres and Dominguez gave wide estimates for the duration of the search, varying from one and one-half to three hours. During this time, Torres (who remained handcuffed), Dominguez, and the children sat together on the couch. At some point, the agents permitted Dominguez to make breakfast for the children, and, in Torres's words, the children received nothing but "nice comments" from the agents. Eventually, the agents removed the handcuffs and allowed Torres to get dressed so that he could escort the agents to the building where he worked.[2]

The agents did not find drugs or drug paraphernalia in the home. They, however, seized several items, including a Glock 9mm semiautomatic handgun, a Ruger .357 magnum revolver, ammunition for those two weapons plus ammunition for a third weapon which they did not locate, a roll of plastic tape, and various papers, including earnings statements, phone cards, and a gas bill. These items were returned to appellees within five days.

B. Procedural History

Appellees filed their complaint in the district court on September 16, 1997. Ultimately, after amendments, the appellees asserted that they were entitled to recover under the Federal Tort Claims Act and directly under the Constitution for Fourth and Fifth Amendment violations with respect to the issuance and execution of the warrant. See Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971). Following discovery, the agents moved for summary judgment, and the district court partially granted their motion analyzing the appellees' claims under the Fourth Amendment alone.

_____

2. According to appellees' amended complaint, after the agents completed the search of appellees' home, they conducted a warrantless search of property owned by "plaintiff 's father."

4

The district court held that appellees failed to allege a constitutional violation with respect to the agents' conduct up to and including the initial entry into appellees' home. In this regard, the court first determined that there was probable cause for the issuance of the warrant. The court then found that the agents had no reason to believe that they were executing the warrant at the wrong location. In so ruling, the court declined to place any significance in the fact that the warrant misdescribed the color of the front door of the home as the court found that this mistake was "trivial" given that the warrant otherwise described appellees' home accurately. The court then ruled that the agents acted lawfully in using a battering ram to break down the front door.

The district court, however, refused to grant summary judgment to the agents with respect to their conduct once they entered the home. Although the court found that their treatment of Dominguez and the children was "reasonable, and indeed, duly considerate under the circumstances," the court was "unable to find that the agents' conduct . . . was reasonable and not excessive" with respect to Torres's handcuffing for the duration of the search.

The court then concluded that the agents exceeded the scope of the warrant when they searched the appellees' entire home rather than just the basement. Although the warrant specifically authorized a search of "the property known as 3936 N. 5th Street, Philadelphia, PA," the court determined that the warrant was "circumscribed" by the supporting probable cause affidavit, which stated that cocaine was stored in the basement. The court then indicated, however, that it was "possible" that exigent circumstances (specifically, the presence of weapons and ammunition) justified a broader search of the entire home.

Overall the district court's memorandum opinion is ambiguous with respect to its disposition of the agents' motion for summary judgment on the basis of qualified immunity for their conduct in searching beyond the basement. The court may have intended to grant the agents summary judgment based on its finding of exigent circumstances, but its use of the word "possible" suggests that the court found a factual issue for trial and hence

5

denied summary judgment. Indeed, even the agents are uncertain as to how the court ruled for they explain in their reply brief that the "district court appears to have found that the scope of the search was probably supported by exigent circumstances, but reserved judgment." Reply br. at 4 n.2.3 Moreover, the agents in their opening brief defended the validity of the search to the extent that it went beyond the basement. Plainly, they would have had no reason to brief that issue if they had been granted summary judgment on it. In the circumstances, we conclude that the district court denied summary judgment with respect to appellees' claims that the search unconstitutionally exceeded the scope of the warrant.

The district court further ruled that the agents acted unlawfully by seizing items not specifically listed in the warrant. The district court later reconsidered this ruling, however, and in an order of January 5, 1999, granted summary judgment in the agents' favor as to the seizure of items from appellees' home.

The court also addressed appellees' allegation that the agents "destroy[ed] doors, ripp[ed] out ceilings and walls and overturn[ed] clothes and toys" during the search. The court found no evidence in the record to support this allegation, but refused to grant the agents summary judgment on the issue because their motion papers did not specifically address the property damage claim. Finally, the court held that appellees lacked standing to maintain any claims with respect to warrantless searches of other properties (specifically, Torres's place of employment and property belonging to Torres's father) which allegedly took place on the day in question.

Agents Donahue, Caplan, Kelly, Capone, and Cohen,
_____

3. Actually, the agents hedge on the point as they also contend that the district court "granted qualified immunity and ruled in favor of the defendants on all but two of [appellees' constitutional] claims: the duration of the restraint of Torres, and excessive damage to the residence." Reply br. at 2. It appears that the agents quite naturally would like to read the district court's opinion as granting them qualified immunity on the scope of the search issue but are unwilling to forego briefing the issue.

6

appeal to the extent that the district court denied them summary judgment on the basis of qualified immunity. In particular, the question they present is whether the district court should have granted qualified immunity to them with respect to the following aspects of their conduct in executing the search warrant: (1) leaving Torres handcuffed for the duration of the search; (2) searching the entire premises rather than just the basement; and (3) causing excessive damage to the walls, ceilings, and other items in the home.4

II. JURISDICTION and STANDARD OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. SS 1331 and 1346 and we have jurisdiction to hear this appeal under 28 U.S.C. S 1291 pursuant to the collateral order doctrine, as applied to qualified immunity cases. See Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806 (1985). We exercise plenary review over the district court's denial of summary judgment on qualified immunity grounds. See Abbott v. Latshaw, 164 F.3d 141, 145 (3d Cir. 1998), cert. denied, 119 S. Ct. 2393 (1999).

Under the doctrine of qualified immunity, "[g]overnment officials performing discretionary functions are`shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982)); In re City of Philadelphia Litig., 49 F.3d 945, 961 (3d Cir. 1995). The inquiry when a defendant claims qualified immunity is "whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession." Sharrar, 128 F.3d at 826. Officers who "reasonably but mistakenly" conclude that their

_____

4. The appellees have challenged the district court's decision to the extent that it granted the agents summary judgment but those issues are not before us on this appeal. The district court partially granted and partially denied the government's motion for summary judgment on the Tort Claims Act issues but those dispositions as well are not before us.

7

conduct is lawful are thus entitled to immunity. Id. A court, however, need not consider whether the right implicated was clearly established at the time of the events in question if the plaintiff has not alleged a deprivation of a constitutional right. See Wilson v. Layne, 119 S.Ct. 1692 (1999); County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5, 118 S.Ct. 1708, 1714 n.5 (1998); Siegert v. Gilley, 500 U.S. 226, 111 S.Ct. 1789 (1991); Larsen v. Senate of Pa., 154 F.3d 82, 86 (3d Cir. 1998), cert. denied, 119 S.Ct. 1037 (1999).

III. DISCUSSION

A. Handcuffing of Torres

The first question before us is whether the agents acted lawfully in their treatment of Torres during the execution of the search. If they did, then they were entitled to qualified immunity because the appellees would not have "alleged a deprivation of a constitutional right at all." Lewis, 523 U.S. at 841 n.5, 118 S.Ct. at 1714 n.5.

The Supreme Court has held that officers executing a search warrant lawfully may restrain persons present at the searched premises. See Michigan v. Summers, 452 U.S. 692, 705, 101 S.Ct. 2587, 2595 (1981) ("[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.") (footnotes omitted). In Summers, the Supreme Court noted that a warrant to search for narcotics "may give rise to sudden violence or frantic efforts to conceal or destroy evidence," and thus the risk of harm to officers and occupants alike "is minimized if the officers routinely exercise unquestioned command of the situation." Id. at 702-03, 101 S.Ct. at 2594. The Supreme Court indicated that the officers might exceed their proper authority in an "unusual case" involving "special circumstances, or possibly a prolonged detention," but the "routine" detention of residents while a search is conducted is constitutional. Id. at 705 n.21, 101 S.Ct. at 2595 n.21.

Further, case law has indicated that at least in certain circumstances officers lawfully may handcuff the occupants

8

of the premises while executing a search warrant. In United States v. Fountain, 2 F.3d 656 (6th Cir. 1993), officers executing a search warrant for narcotics and firearms handcuffed the occupants of the house and forced them to lie face down on the floor while they conducted the search. Id. at 659-60. The Court of Appeals for the Sixth Circuit held that the detention was reasonable under the Fourth Amendment:

> When occupants of a residence are detained during the execution of a search warrant, the circumstances ordinarily will justify more intrusive behavior by the police than in a typical on-the-street detention. When the ATF agents entered Fountain's home pursuant to the warrant to search for narcotics, they faced a confined, unfamiliar environment that was likely to be dangerous. [The occupants] were handcuffed and forced to lie face down on the living room floor while the search was conducted. Concern for safety of the agents and the need to prevent disposal of any narcotics on the premises, justified the restraint of the occupants, particularly under the circumstances of this case, where the search was part of a narcotics investigation and weapons had been seized from the home just one month earlier. The `character' of the intrusion on [the occupants] and its `justification' were reasonable and proportional to law enforcement's legitimate interests in preventing flight in the event incriminating evidence is found and in minimizing the risk of harm to officers. Those concerns plainly outweighed the intrusion experienced by [the occupants] in being required to be on the living room floor while the search was completed. . . .

Id. at 663; see also Van Brackle v. Parole Bd., No. Civ. A. 96-2276, 1996 WL 544229, at *2 (E.D. Pa. Sept. 26, 1996) (holding that the detention of an occupant in handcuffs during a search was lawful) (citing Fountain).

On the other hand, handcuffing may be excessive in certain circumstances. In Franklin v. Foxworth, 31 F.3d 873 (9th Cir. 1994), the court held that officers executing a warrant violated the Fourth Amendment when they carried a seriously disabled man from his bed and left him

handcuffed on a couch for over two hours with nothing to cover the lower half of his body. Id. at 874-78. Though the man complained that his handcuffs hurt and that he was cold, the officers waited an hour before adjusting the cuffs and giving him a blanket. Id. at 882 (Brunetti, J., concurring). The Court of Appeals for the Ninth Circuit labeled the officers' conduct "wanton[ ] and callous[ ]" and found that this was an example of the "unusual case" envisioned by Summers. Id. at 876-78. Accordingly, the court reversed a bench trial judgment in favor of the officers. Id. at 874. Moreover, in a concurring opinion, one judge stated that the officers' conduct was so egregious as to preclude any claims of qualified immunity on remand. Id. at 878-80 (Reinhardt, J., concurring).

In Baker v. Monroe Township, 50 F.3d 1186 (3d Cir. 1995), we indicated that officers acted excessively when they handcuffed a mother and her teenage children who happened to be approaching a residence for a social visit when the officers arrived to execute a search warrant. See id. at 1192-94. The plaintiffs claimed that the officers left them handcuffed for 25 minutes and pointed guns at them. Id. at 1189, 1192-93. Noting that the "use of guns and handcuffs must be justified by the circumstances," id. at 1193, we reversed a summary judgment in favor of an officer, holding that a Fourth Amendment violation could be established if the plaintiffs' allegations regarding their treatment were true. See id. at 1192-94 ("[T]he appearances were those of a family paying a social visit . . .[T]here is simply no evidence of anything that should have caused the officers to use the kind of force they are alleged to have used.").5

Viewing the facts in the light most favorable to appellees, we are of the view that the agents' treatment of Torres was

_____

5. Baker did not present a qualified immunity issue. Rather, the district court had granted summary judgment in favor of an officer on the ground that there was insufficient evidence to establish that he had participated in or had knowledge of the treatment the plaintiffs suffered. Baker, 50 F.3d at 1189. We reversed, holding that the plaintiffs' testimony, if true, would support a Fourth Amendment claim against the officer. See id. at 1192-94.

10

lawful.6 The agents left Torres on the floor for only five minutes, and then helped him to the couch, where he still had his towel to cover himself. Moreover, the agents permitted Dominguez and the children to sit with Torres while the search was conducted. The agents directed "nice comments" to the children, and they permitted Dominguez to prepare breakfast for the children. The agents also permitted Dominguez to call her supervisor to say that she would be missing work. The agents loosened Torres's handcuffs after he twice indicated to them that they were too tight. The agents did not point their guns after the initial moments following their entry into the home, and Torres testified that the agents "didn't harm any of us." Further, the duration of the search was not excessive under the circumstances, given the size of the home (two stories plus a basement).

On these facts, the agents' conduct is far from analogous to the excessive behavior of the officers in Franklin and Baker. As the Supreme Court indicated in Summers, the execution of a narcotics search warrant "may give rise to sudden violence or frantic efforts to conceal or destroy evidence," and thus officers are entitled to "routinely exercise unquestioned command of the situation." Summers, 452 U.S. at 702-03, 101 S.Ct. at 2594. The agents had good reason to fear violence or destruction of evidence as they entered the appellees' home because they had cause to believe that the premises was a key location in a large-scale cocaine ring. Further, Torres informed the agents in the initial moments of the search that there were two weapons in the home. Moreover, the agents retrieved firearms, a Glock 9mm semiautomatic and a Ruger .357 magnum, which might be associated with a violent drug operation. The officers also found ammunition for a third type of firearm that they did not locate during their search but which they feared might be present.

_____

6. We note that determining whether officers have used excessive force is a fact-specific inquiry, taking into account such factors as the severity of
the crime, any threat to officer safety, any active resistance, and any injury resulting to the person restrained. See Mellott v. Heemer, 161 F.3d 117, 122 (3d Cir. 1998), cert. denied, 119 S.Ct. 2051 (1999).

11

The circumstances confronting the agents were such that they had reason to be concerned for their safety. Accordingly, we conclude that the agents acted lawfully in their treatment of Torres. Therefore, they are entitled to qualified immunity with respect to claims regarding that treatment.

B. Extent of the Search

The second question before us is whether the agents acted lawfully in searching beyond the basement of the home. If they did, then they were entitled to qualified immunity on this claim as well because the appellees would not have "alleged a deprivation of a constitutional right at all." Lewis, 523 U.S. at 841 n.5, 118 S.Ct. at 1714 n.5.

The warrant authorized a search of "the property known as 3936 N. 5th Street, Philadelphia, PA." Although the probable cause affidavit stated that Nieves stored cocaine in five-gallon cans in the basement of the premises, the affidavit recited other items the location of which were not expressly limited to any particular portion of the building. The affidavit stated that "[w]hile inside the premises with NIEVES in January, 1996" the confidential informant saw "diluents [sic], a scale, a heat sealer for the packages of cocaine, and a vise which NIEVES used to crush the hardpacked cocaine." Furthermore, according to the affidavit, Nieves repeatedly told the confidential informant that he was continuing to use 3936 North Fifth Street to store and package cocaine, and the informant saw Nieves's truck parked outside the building on January 3, 1997, just a few weeks before the search warrant was executed.

The Supreme Court has stated that "[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found." United States v. Ross, 456 U.S. 798, 820, 102 S.Ct. 2157, 2170 (1982). In this regard, we point out that courts specifically have held that a warrant encompasses the authority to search the entire building if the person who is the target of the search has access to or control over the entire premises. See, e.g., United States v. Butler, 71 F.3d 243, 249 (7th Cir. 1995) (where a building is being used as a single unit,"a finding of probable cause as to a portion of the premises is

12

sufficient to support a search of the entire structure"; a search of the entire premises is permitted where the target of the investigation "exercised `dominion and control' over the entire building or had access to the entire structure") (citation omitted); United States v. Whitten, 706 F.2d 1000, 1008 (9th Cir. 1983) ("[A] warrant may authorize a search of an entire street address while reciting probable cause as to only a portion of the premises if they are occupied in common rather than individually, if a multiunit building is used as a single entity, if the [alleged wrongdoer] was in control of the whole premises, or if the entire premises are suspect."); see also 2 Wayne R. LaFave, Search and Seizure S 4.5, at 41 (3d ed. Supp. 1999) ("The obvious point is that when a resident apparently has the run of the premises, there is no reason to conclude that the warrant must be limited to the precise spot where the items sought happened to be when observed on a prior occasion."); cf. Jackson v. Byrd, 105 F.3d 145 (3d Cir.) (habeas corpus petition denied in controlled substance constructive possession case where lessee-petitioner had access and control over all areas of an apartment even though the substance was found in a bedroom occupied by petitioner's brother), cert. denied, 520 U.S. 1268, 117 S.Ct. 2442 (1997).

The building at 3936 North Fifth Street was not a multi-unit premises with separate areas controlled by separate residents. Rather, it was a traditional two-story home with bedrooms upstairs, a dining room and kitchen downstairs, and a basement accessible through the dining room. Accordingly, the warrant authorized the search of the entire building and the appellees did not allege a violation of a constitutional right at all on the scope of the search claim. Therefore, the agents are entitled to qualified immunity on that claim.

In reaching our result, we recognize that the appellees' amended complaint with respect to the scope of the search is very general, as it merely alleges that the agents "conducted an excessive and unreasonable search." Nevertheless, we are of the view that a plaintiff by a generalized pleading should not be deemed to have alleged a deprivation of a constitutional right so as to defeat a

13

claim of immunity when an inquiry into the undisputed facts demonstrates that there is no basis for the claim. After all, the Supreme Court in Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3038-39 (1987), made it clear that when an officer claims immunity on the ground that he or she did not violate a clearly established constitutional or statutory right of which a reasonable person would have known the plaintiff 's claim must be considered in a specific context rather than in an abstract generalized sense. We think that the same standard must be applied in determining whether a plaintiff has alleged a violation of a constitutional right in the first place.

C. Damage to the Home

The district court found that there was no evidence to support appellees' allegation that the agents caused excessive damage to doors, ceilings, walls, and other property inside the home, but nevertheless declined to grant summary judgment because the agents' motion papers did not specifically address the property damage claim. We are constrained to dismiss the appeal insofar as it relates to this claim because we are without power to inquire into the sufficiency of a plaintiff 's evidence on an appeal from a denial of qualified immunity. See Johnson v. Jones, 515 U.S. 304, 313, 115 S.Ct. 2151, 2156 (1995). Despite the district court's view, we find that on the record before us there are questions of fact relating to the allegation that the agents caused excessive damage once inside the premises. While we do not foreclose the agents from making another motion for summary judgment on the point, see Behrens v. Pelletier, 516 U.S. 299, 306-11, 116 S.Ct. 834, 838-41 (1996), as the record now stands, the appellees' claim with respect to excessive damage must be resolved at trial. We do point out, however, that because it could be anticipated that contraband would be secreted, a reasonable officer would believe that at least in some circumstances he or she would not violate clearly established constitutional or statutory rights of which a reasonable person would have known in damaging a premises in executing a search warrant.

D. Agent Donahue

While the district court believed that Donahue was present when the warrant was executed, the parties agree

14

that he was not there. Accordingly, Donahue is entitled to qualified immunity as to all of appellees' claims arising from the execution of the warrant. Of course, this conclusion takes him out of the case, as the district court found that the appellees failed to allege a constitutional violation up to and including the agents' initial entry into the appellees' home.

IV. CONCLUSION

Donahue is entitled to qualified immunity with respect to each of the claims at issue on this appeal. The other agents are entitled to qualified immunity with respect to the handcuffing of Torres and their conduct in searching beyond the basement of the home, but their appeal will be dismissed with respect to appellees' claim that they did excessive damage during the search. Accordingly, we will remand the matter to the district court to enter summary judgment on all issues in favor of Donohue and to enter summary judgment in favor of the other agents to the extent that they are entitled to qualified immunity. The parties will bear their own costs on this appeal.

A True Copy:
Teste:

    Clerk of the United States Court of Appeals
    for the Third Circuit

15