McCONNELL, Circuit Judge,
dissenting.
Contrary to the majority’s holding, the district court’s decision denying the defendants’ motions to dismiss on qualified immunity grounds is an appealable order, turning as it does on a pure question of layr: whether private citizens voluntarily assisting at a federally-sponsored event, when sued for alleged constitutional violations under Bivens, are entitled to invoke the protections of qualified immunity in the absence of proof that they were closely supervised by federal officials. Because the district court answered that legal question in the negative, it denied the defendants’ motions for qualified immunity at the dismissal stage and ordered limited discovery to determine whether they were so supervised. As explained below, the court’s legal conclusion was in error. The court should have gone on to the merits of the qualified immunity claim: whether the plaintiffs’ complaint alleged a constitutional violation, and if so, whether that violation was clearly established.[1] This court has jurisdiction to review that erroneous decision. I therefore respectfully dissent.
1. Background and Proceedings Below
The plaintiffs claim that the defendants violated their First Amendment rights by ejecting them from a public meeting, paid for by public funds, at which President George W. Bush was speaking. Allegedly they were ejected because a bumper sticker on their vehicle (“No Blood for Oil”) indicated they disagreed with the President. The defendants are two private citizens who volunteered to assist at the event.[2] The complaint alleges that the defendants acted “at the direction of and pursuant to polic[i]es of ... federal officials.” Compl. at 7. It does not allege that, in the conduct of their responsibilities, the defendants were closely supervised by federal officials.
The defendants each filed a motion to dismiss based on qualified immunity. The district court, based on Richardson v. McKnight, 521 U.S. 399, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997), reasoned that whether the defendants were entitled to invoke the protections of qualified immunity “turn[ed] on whether Defendants Cas-per and Klinkerman were acting as federal officials or whether they were private parties acting at the direction of federal officials, and whether they were closely supervised.” Weise v. Casper, No. 05-02355, 2006 WL 3093133, at *4 (D.Colo. Oct.30, 2006). On the face of the complaint, it was not evident whether the “close supervision” condition was satisfied. The district court denied the motions to dismiss “with *1269 out prejudice,” and granted the plaintiffs’ motion for “limited discovery” on this “threshold issue.” Id. The defendants appealed.
It is not entirely clear what the district court meant by denying the motions “without prejudice.” Id. Every denial of a motion for qualified immunity is “without prejudice” in the sense that, as the case moves from the dismissal stage to summary judgment to trial to verdict, if facts emerge under which the defendants are entitled to qualified immunity, they may make appropriate motions in district court and take appeals to the court of appeals; the denial of a motion for qualified immunity at an earlier stage does not stand as a bar. Behrens v. Pelletier, 516 U.S. 299, 308-09, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). On the other hand, having denied the defendants’ motions based on the pleadings and ordered discovery, the district court necessarily precluded any renewal of a motion to dismiss. Once discovery — even “limited discovery” — takes place on this point, the defendants’ invocation of qualified immunity must be in the form of a motion for summary judgment. See Fed. R. Civ. Pro. 12(b)(6) (reference to and reliance on any “matters outside the pleading” causes a motion to dismiss to “be treated as one for summary judgment”); see also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1366. Despite the district court’s use of the words, “without prejudice,” the defendants would not be able to renew their motions at the dismissal stage, and thus would not be able to vindicate their asserted right to qualified immunity as a matter of law, prior to discovery.
II. Appellate Jurisdiction
In Mitchell v. Forsyth, the Supreme Court addressed whether a district court’s decision to deny a claim of qualified immunity on legal grounds is appealable under the collateral order doctrine. 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Ordinarily, denial of a motion to dismiss or a motion for summary judgment is not a final order and is therefore not appealable; but because those entitled to qualified immunity have a right to dispose of the legal proceedings against them as quickly as possible, and because the claim to immunity is sufficiently separable from the merits of a defense, the Court held that defendants are entitled to interlocutory appeals when their motions for dismissal or summary judgment on qualified immunity are denied. Id. at 525-28, 105 S.Ct. 2806. In Behrens, the Court emphasized that immunity “is meant to give government officials a right, not merely to avoid ‘standing trial,’ but also to avoid the burdens of ‘such pretrial matters as discovery. ...’” 516 U.S. at 308, 116 S.Ct. 834 (quoting Mitchell, 472 U.S. at 526, 105 S.Ct. 2806). The Court explained that “denial of a motion to dismiss is conclusive as to this right [to avoid discovery],” and deemed it “settled ... that this right is important enough to support an immediate appeal.” Behrens, 516 U.S. at 308, 116 S.Ct. 834.
To be sure, as the majority notes, interlocutory appeals are limited “to cases presenting neat abstract issues of law.” Johnson v. Jones, 515 U.S. 304, 317, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (internal quotation omitted); see also Behrens, 516 U.S. at 313, 116 S.Ct. 834. Johnson holds that an interlocutory appeal is not permitted when the district court denies a motion for summary judgment on the basis of “a fact-related dispute about the pretrial record, namely whether or not the evidence ... was sufficient to show a genuine issue of fact for trial.” 515 U.S. at 307, 115 S.Ct. 2151 (emphasis in original). But such evidentiary issues can arise only on motions for summary judgment, where the presence of a disputed issue of material fact is a basis for denial. The majority *1270 errs in extending this principle to the context of motions to dismiss. A motion to dismiss does not test “evidentiary sufficiency,” Maj. Op. at 1264, because no actual evidence is or can be offered by either side. Rather, at this stage the court is asked to decide whether, assuming the allegations of the complaint are true, the defendants are entitled to dismissal as a matter of law. That is a legal question, not a factual one.
In this case, the district court conclusively resolved that the defendants had no “right ... to avoid the burden[ ] of ... discovery,” Behrens, 516 U.S. at 308, 116 S.Ct. 834, on the issue of whether they were closely supervised by federal officials, notwithstanding the defendants’ legal argument that such supervision is not a necessary predicate to their invocation of qualified immunity. See Appellant’s Br. 10-11. Whether the defendants are correct depends on resolution of an “abstract” — and important — question of law: whether the Supreme Court’s holding that employees of a private, for-profit corporation conducting government functions are not entitled to qualified immunity, Richardson v. McKnight, 521 U.S. 399, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997), also eliminates immunity for private citizens who voluntarily assist in performing such functions at the behest of federal officials. The majority’s holding that the district court’s order is not appealable denies the defendants the valuable right to obtain a ruling on this significant legal question, and exposes them to the burden of discovery on an issue that can be resolved as a matter of law, on the pleadings. The majority’s holding thus directly conflicts with Behrens and Mitchell.
The majority’s interpretation of Johnson — that an order denying a motion to dismiss is not appealable if it concludes that “the pleadings are insufficient as to some factual matter,” Maj. Op., at 1264 would make nearly every denial of a motion to dismiss unappealable. Denial of a motion to dismiss can always be characterized as resting on the conclusion that the facts alleged in the complaint are insufficient to establish the defendant’s right to dismissal. Of course, proof of additional facts might well show that the defendant was entitled to prevail, but that does not convert the dismissal question into a “fact-related dispute,” Johnson, 515 U.S. at 307, 115 S.Ct. 2151. Rather, a motion to dismiss raises only a question of law: whether, taking the facts in the complaint as true, the plaintiff has a legal claim.
Indeed, the Supreme Court has warned against overreading Johnson as the majority does. In Behrens, the Court explained that although summary judgment is often denied because “there are controverted issues of material fact ... Johnson surely does not mean that every such denial ... is nonappealable.” 516 U.S. at 312-13, 116 S.Ct. 834. All that the district court has held here — because it is all that can be held on a Rule 12(b)(6) motion — is that the facts in the complaint do not show that the defendants are entitled to invoke qualified immunity. That is a legal conclusion about the scope of qualified immunity for private parties, and we must decide whether it is correct.
The majority cites neither Supreme Court nor Tenth Circuit precedent to support its assertion that denials of motions to dismiss raise factual issues and hence may be unappealable. It does cite several eases from the Second Circuit, which also deny jurisdiction over appeals from motions to dismiss on qualified-immunity grounds. E.g., Almonte v. City of Long Beach, 478 F.3d 100, 110 (2d Cir.2007). The Second Circuit’s view, however flies in the face of a better-reasoned decision from the Seventh Circuit, Levenstein v. Salafsky, 164 F.3d 345 (7th Cir.1998) (Wood, J.). *1271 The Seventh Circuit explained that “unlike a motion for summary judgment, which raises in part the question whether the opposing party has demonstrated the existence of disputed facts, a motion to dismiss for failure to state a claim raises only legal issues. This is because a Rule 12(b)(6) motion requires the court to accept as true all well-pleaded facts in the complaint, drawing all reasonable inferences in favor of the opposing party.” Id. at 347. The Fifth Circuit has reached the same conclusion. Doe ex rel. Doe v. Hillsboro Indep. Sch. Dist, 81 F.3d 1395, 1401 (5th Cir.1996), vacated en banc on other grounds, 113 F.3d 1412 (5th Cir.1997) (“In the Rule 12(b)(6) context, there can never be a genuine-issue-of-fact-based denial of qualified immunity, as we must assume that the plaintiffs factual allegations are true. Thus, denials of motions to dismiss on the basis of qualified immunity are always ‘purely legal’ denials”). This is the better view of the law.
I therefore conclude that we have jurisdiction to review the legal question decided by the district court.
III. The Defendants’ Right to Invoke Qualified Immunity
The district court interpreted Richardson v. McKnight as holding that private persons sued for constitutional violations committed under color of state or federal law[3] are not entitled to invoke qualified immunity unless these actions were “closely supervised by government officials.” Weise v. Casper, No. 05-02355, 2006 WL 3093133, at *4 (internal quotation marks omitted). This was an overbroad interpretation of Supreme Court precedent.
Prior to Richardson the rule in our circuit was that “a private individual who performs a government function pursuant to a state order or request is entitled to qualified immunity if a state official would have been entitled to such immunity had he performed the function himself.” Eagon ex rel. Eagon v. City of Elk City, 72 F.3d 1480, 1489 (10th Cir.1996) (cited in Richardson, 521 U.S. at 402, 117 S.Ct. 2100) (internal quotation marks omitted). In Richardson, however, the Court held that prison guards employed by private, for-profit corporations may not invoke qualified immunity. In so doing, the Court described its holding as “narrow[,]” and limited to “the context in which it arose.” Richardson, 521 U.S. at 413, 117 S.Ct. 2100. The Court expressly noted that the case “does not involve a private individual briefly associated with a government body, serving as an adjunct to government in an essential governmental activity, or acting under close official supervision.” Id.
In its review of the historical scope of qualified immunity for private persons in Richardson, the Supreme Court found that although there was no general immunity for “private individuals working for profit,” nonetheless “the [common] law did provide a kind of immunity for certain private defendants, such as doctors or lawyers who performed services at the behest of the sovereign.” Id. at 407, 117 S.Ct. 2100 (citing Tower v. Glover, 467 U.S. 914, 921, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984) & Joel Prentiss Bishop, Commentaries on Non-Contract Law, §§ 704, 710 (1889)). The Court then offered two functional justifications for concluding that private prison guards are not entitled to qualified *1272 immunity. First, “Competitive pressures mean ... that a firm whose guards are too timid will face threats of replacement by other firms with records that demonstrate their ability to do both a safer and a more effective job.” Richardson, 521 U.S. at 409, 117 S.Ct. 2100. This competitive pressure thus substitutes for the protection of qualified immunity as a means of ensuring “the vigorous exercise of official authority.” Id. at 408, 117 S.Ct. 2100, quoting Butz, 438 U.S. at 506, 98 S.Ct. 2894 (1978). Second, private prison firms faced a labor market with different economic incentives — they were required to buy comprehensive insurance for civil rights torts, and were free to offer higher pay or extra benefits to their guards because they were liberated from civil service restraints. Richardson, 521 U.S. at 411-12, 117 S.Ct. 2100.
Similar considerations explain the Court’s earlier decision in Wyatt v. Cole, 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992), which denied the protection of qualified immunity to private persons who had invoked state replevin, garnishment, and attachment statutes later held to be unconstitutional. Because the defendants were acting out of their own economic interest and not for any public purpose, the traditional purposes of qualified immunity would not be served by extending it to the defendants. Id. at 167-68, 112 S.Ct. 1827.
Neither of those justifications applies to private persons who volunteer to assist federal officials in the conduct of public functions. There are no “[cjompetitive pressures,” Richardson, 521 U.S. at 409, 117 S.Ct. 2100, that would spur private volunteers to a vigorous performance of their responsibilities in the face of the prospect of Bivens suits. Such persons receive no higher pay or benefits or other economic advantage, and no private employer is forced to obtain insurance on their behalf. Indeed, in terms of the functional justification identified in Richardson, qualified immunity might well be of greater necessity for persons voluntarily assisting the government than it is for government officials, who at least are being paid to do the job and might be fired for lax performance. If government officials need qualified immunity lest the “fear of being sued ... dampen the ardor of all but the most resolute, or the most irresponsible,” Harlow v. Fitzgerald, 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (internal quotation marks omitted), then private citizens who cooperate with the government out of motives of public service need it a fortiori.
Richardson is best read not as a broad denial of qualified immunity to less-than-closely-supervised private persons, but as a narrow holding that the incentive system created by immunity can be eliminated where the competitive pressures of the private market provide a substitute. The general rule of Eagon should continue to control for those not subject to the competitive pressures deemed relevant in Richardson.
This view of Richardson is confirmed by our decision in Rosewood Servs., Inc., v. Sunflower Diversified Servs., Inc., 413 F.3d 1163, 1164 (10th Cir.2005), where we held that a non-profit “community developmental disability organization! ]” and its president were not entitled to immunity under Richardson. There, we examined the market for such disability organizations and concluded that even though the market was heavily regulated, the “competitive market forces [were] sufficiently present” to provide a substitute incentive system. 413 F.3d at 1169. Thus, “sufficient competitive market pressures existed] to lessen timidity on the part of’ the organization and its employees and *1273 eliminated the need for qualified immunity. Id.
The defendants here more resemble the “private individual briefly associated with a government body, serving as an adjunct to government in an essentially governmental activity,” which the Court excluded from its rule in Richardson, than they do the employee of “a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government, [which] undertakes that task for profit and potentially in competition with other firms.” Richardson, 521 U.S. at 413, 117 S.Ct. 2100. Therefore, the allegation that the defendants here were directed by federal officials and acted pursuant to federal policy is enough for me to conclude that they are entitled to raise a qualified immunity defense at this stage of the litigation, without proof that their activities were closely supervised by federal officials.
IV. Conclusion
The district court’s order denying the defendants’ motions to dismiss is appeal-able under the collateral order doctrine, and the court’s holding that the defendants are not entitled to invoke qualified immunity without proof that they acted under close official supervision should be reversed. I therefore respectfully dissent from the majority’s opinion.

. It seems highly unlikely that a motion to dismiss could be granted at this stage in the proceedings. The allegations in the complaint do not set forth the terms of the alleged federal policy the defendants were enforcing or its asserted authority or justifications, which would make constitutional analysis extremely difficult. But because the district court addressed only the issue of whether the defendants, as private individuals, are entitled to invoke the protections of qualified immunity, the proper course is for this court to remand and allow the district court to sort through the merits issues in the first instance.

. The complaint alleges that Mr. Klinkerman identified himself as a volunteer. Compl. at 4. Mr. Casper was identified as a Secret Service agent. Id. If either of them is in fact an agent rather than a volunteer, his right to invoke qualified immunity is not disputed, so for purposes of discussion I will assume ar-guendo that both are volunteers.

. Although the Supreme Court has never said so, I assume that Richardson applies not only to the immunities available to state actors under § 1983, but also to those available to federal actors under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), because the two immunities are generally taken to be coterminous. Butz v. Economou, 438 U.S. 478, 501, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).