# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 3, 2008

Charles R. Fulbruge III
Clerk

No. 07-40261

STEVE COOLEY

Plaintiff-Appellee

V.

FIRE CHIEF GERALD GRIMM, In His Official and Individual Capacity

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:06-CV-234

Before JONES, Chief Judge, and WIENER and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Gerald Grimm, Fire Chief of the Texas City Fire Department ("Fire Department"), appeals the district court's denial of his motion for summary judgment seeking dismissal on the grounds of qualified immunity from the 42 U.S.C. § 1983 First Amendment retaliation suit filed by Plaintiff-Appellee Steve Cooley, an Engineer with the Fire Department, who was bypassed for promotion to Captain. For the following reasons, we hold that we

[*] Pursuant to 5TH CIR. R. 47.5, this Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

lack appellate jurisdiction to consider the district court's interlocutory order and DISMISS Grimm's appeal.

## I. FACTS AND PROCEEDINGS[1]

A. Facts

Texas City ("the City") has a professional Fire Department. Grimm has held the rank of Chief since 1991, and Cooley has held the rank of Engineer since November 1998. Cooley is a member and elected officer of the Texas City Fire Fighters Association ("the Association"), the bargaining representative of the fire fighters. The Fire Department operates under a Collective Bargaining Agreement ("CBA") and the Fire Fighter and Police Officer Civil Service Act, Texas Local Government Code Chapter 143. Each year, the City and the Association negotiate a successor CBA.

Grimm makes promotions in the Fire Department using competitive procedures mandated by the civil service law.[2] The highest-ranked candidate on the promotional eligibility list––based upon test scores and seniority––must be considered first for promotion; however, Grimm may bypass this candidate if he has a "valid reason." Beginning in spring 2004, a series of events occurred that created three vacancies in the rank of Captain. Captains work closely with the Fire Chief in managing the Fire Department. At all relevant times, Cooley was ranked first and Joe Tumbleson was ranked second.

---

[1] Because the district court failed to set forth in its order the factual disputes that precluded granting summary judgment in detail, this Court must "undertake [a] cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party [Cooley], likely assumed." Johnson v. Jones, 515 U.S. 304, 319 (1995).

[2] The current list of ranks in the Fire Department are as follows: Chief, Captain, Engineer, and Fire Fighter. Although the rank of Assistant Fire Chief was created in 2004, it was eliminated in early 2005, due to pressure from the Association.

**(1) Early 2004 vacancy and June 2004 offer of promotion to Cooley**

At some time prior to June 2004, Fire Marshal Ken Jones retired, creating the first vacancy for Captain. On June 18, 2004, Grimm offered Cooley a promotion. It was for a forty-hour-per-week, Monday-through-Friday administrative position. Cooley declined this promotion because personal commitments required that he maintain his then-current shift schedule. Tumbleson also declined.

**(2) June 2004 through September 2004 union negotiations**

In June 2004, the City and the Association began their annual negotiations for a successor CBA, which generally concern the wages, hours, and working conditions of the fire fighters. Grimm, the Mayor of the City, and the City's attorney represented the City. Cooley, Captain Harmon Hart, and Fire Fighter Mark Pandanell, among others, represented the Association. During these negotiations, the City took the position that it wanted to eliminate the "prevailing rights" provision in the CBA. Under this provision, working conditions not specifically identified in the CBA itself are nonetheless protected during the life of the agreement. The Association did not agree with the City's position. Negotiations grew increasingly contentious and continued throughout late summer and into September 2004. Ultimately, the City and the Association reached an impasse.

Cooley admitted to being a vocal and forceful member of the Association's bargaining team. Other team members recalled Cooley being forceful, but they stated that he was never discourteous to members of the City's bargaining team. Nonetheless, then-Assistant Fire Chief Robert Baker stated that Grimm discussed Cooley's role and behavior in the negotiations with him on several

occasions. Given Grimm's reaction and description of the events, Baker interpreted Grimm's perception of Cooley's behavior "disrespectful."

(3) July 2004 vacancy and November 2004 promotional bypass of Cooley

On July 7, 2004, the City created the rank of Assistant Fire Chief. On July 22, 2004, Grimm promoted Captain Baker to Assistant Fire Chief, creating a second vacancy for Captain. Even though local law required Grimm to make the promotion within sixty days of its opening, he did not do so. Shortly after this deadline expired, Cooley, who was still first on the promotional eligibility list, filed an Association grievance contesting Grimm's failure to promote him.

After Cooley filed his grievance, numerous activities occurred regarding his candidacy for promotion. They are summarized as follows:

(a) Baker's Initial Memorandum: In late September/early October 2004, Baker submitted an unsigned memorandum to Grimm, stating that Cooley needed to spend less time on union activities when he was on duty. In line with this letter, Grimm confirmed that Baker informed him on numerous occasions in 2004 that Cooley engaged in improper union activities while on duty.

(b) Sowell's Series of Letters: On October 4 and 10, 2004, Captain Oseeg Sowell submitted a series of letters to Grimm, referencing Cooley's on-duty union activities and stating that Cooley had a lack of respect for authority.

(c) Cooley's Interview and Baker's Final Memorandum: In mid-October 2004, Grimm instructed Baker and Sowell to review and make a recommendation regarding Cooley's candidacy. As part of this process, for the first time in any Fire Department promotion, Grimm ordered Baker and Sowell to interview Cooley. The interview occurred on October 15, 2004, about the time that the CBA negotiations stalled. Grimm provided Baker and Sowell with

a list of questions, one of which related to union activity.[3]  Based upon this interview, their personal observations, and some limited third-party information, Baker and Sowell wrote a recommendation that urged Grimm to bypass Cooley.  Grimm admitted that he asked them to rewrite the recommendation twice before he accepted it.  The final version, signed only by Baker and dated October 19, 2004, stated that although Cooley was technically very capable, he lacked leadership skills.  Baker concluded that a Cooley promotion would be detrimental to the efficient operation of the Fire Department.  In support, Baker informed Grimm of several incidents, which included Cooley's refusal to participate in diversity training,[4] Cooley's ongoing refusal to recognize Sowell's authority over him, and Cooley's statement that he did not trust management.

(d) Cooley's Performance Review: On November 10, 2004, Baker presented Cooley with a written performance review, the first in many years.  This review rated Cooley's performance as unsatisfactory in five of eleven rating categories and accused him of having very poor professional judgment and rapport with management and colleagues.  This evaluation was signed by Grimm.

Grimm admitted considering these events when deciding whether to promote Cooley.  Grimm also stated that he believed that Cooley had gradually become a problem over the preceding few years.  Cooley, on the other hand, disputed many, if not all, of these complaints about his behavior, characterizing them as an attempt, orchestrated by Grimm, to deprive him of the promotion because of

---

[3] Specifically, one of the questions that Grimm instructed Baker to ask was:

> Based upon my limited interaction with you as an Assistant Chief, you appear to be engaged in the deliberate propagation of negativity with your subordinates and the propagation of union philosophy while on duty.  Do you believe that type of conduct is appropriate for employees, especially those holding supervisory positions?

[4] Notably, this incident occurred prior to June 2004, when Grimm had actually offered a promotion to Cooley.

his role in the union negotiations. Cooley provided a number of affidavits from various Captains and coworkers, including his immediate supervisor, Hart, which support his argument that he was not a behavioral problem, was not a negative influence, and was targeted because of his union activities.

On November 10, 2004, Grimm officially notified Cooley that he would be bypassed for promotion. Grimm delivered a letter to Cooley and the Texas City Firefighters' and Police Officers' Civil Service Commission ("the Commission"), citing his reasons, which he contends were exclusive. It does not mention Cooley's union activities and instead states:

> As a result of observations of Department senior staff and a promotional interview, I have concluded that Mr. Cooley should not be promoted at this time because he lacks leadership skills and he also projects a negative attitude that has been detrimental to building a positive working environment. Mr. Cooley has appeared angry and resentful in the workplace, but has not explained his reasons for exhibiting these demeanors. Mr. Cooley has also been deficient in developing professional relationships with his fellow employees. He has not always maintained professional attitudes at Departmental activities and he has not always fostered positive professional attitudes in his subordinates. Various senior staff members have counseled Mr. Cooley on several occasions that he needs to work on these issues, but he has not followed their advice.

Cooley appealed to the Commission, but it upheld Grimm's decision. This position remained vacant until the City abolished the Assistant Fire Chief position on April 6, 2005 and demoted Baker back to Captain.

(4) January 2005 vacancy and promotional bypass of Cooley

On January 3, 2005, Captain Mark O'Neal retired, creating a third vacancy for Captain. On January 4, 2005, however, Grimm again bypassed Cooley for promotion, using the same reasons previously articulated for the

November 10, 2004 bypass. Cooley appealed to the Commission, but it upheld Grimm's decision. Instead, Grimm promoted Tumbleson.

B. Proceedings

On April 3, 2006, following these two promotional bypasses, Cooley filed the instant 42 U.S.C. § 1983 action against Grimm in his official and individual capacities, the City, and the Commission, in the 122nd Judicial District of Galveston County, Texas. Cooley alleges that Grimm violated his rights to freedom of speech and association under the First Amendment when Grimm bypassed him for promotion based upon his protected union activities. On April 13, 2006, the defendants removed this action to federal district court based on federal question jurisdiction. On January 30, 2007, Grimm moved for summary judgment, asserting the defense of qualified immunity. Cooley responded on February 23, 2007. On February 27, 2007, the district court issued a short order, denying Grimm's motion. The district court found:

> The substantive dispute in this case is over the facts, but in this dispute the Court can over [sic] little assistance. Instead, it must accept Cooley's evidence as true and draw all reasonable inferences therefrom in his favor. Under this one-sided test, the Court concludes that a reasonable Jury, if it believed all evidence favorable to Cooley, could find that Grimm by-passed Cooley solely because of his protected union activities and that Cooley's promotion would not have any significant detrimental effect on the efficiency of the Texas City Fire Department. These are the material fact issues that must be resolved by the Jury and which preclude the entry of summary judgment.[5]

---

[5] In denying Grimm's motion for summary judgment, we note that the district court erred when it stated that a jury could find that "Cooley's promotion would not have any significant detrimental effect on the efficiency of the Texas City Fire Department," because detrimental effect is part of the balancing test under Pickering v. Board of Education, 391 U.S. 563 (1968), performed by the court as a matter of law. See Kinney v. Weaver, 367 F.3d 337,

Order (Feb. 27, 2007) (internal citations omitted). Grimm filed an interlocutory appeal of this order.

## II. DISCUSSION

At a threshold level, we must address whether we have jurisdiction to consider Grimm's interlocutory appeal. "Although a denial of a defendant's motion for summary judgment is ordinarily not immediately appealable, the Supreme Court has held that the denial of a motion for summary judgment based upon qualified immunity is a collateral order capable of immediate review." Kinney v. Weaver, 367 F.3d 337, 346 (5th Cir. 2004) (en banc) (citing Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)). "Our jurisdiction is significantly limited, however, for it extends to such appeals only 'to the extent that [the denial of summary judgment] turns on an issue of law.'" Id. (quoting Mitchell, 472 U.S. at 530).

"[O]fficials enjoy qualified immunity to the extent that their conduct is objectively reasonable in light of clearly established law." Id.

> Whenever the district court denies an official's motion for summary judgment predicated upon qualified immunity, the district court can be thought of as making two distinct determinations, even if only implicitly. First, the district court decides that a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law. Second, the court decides that a genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct. According to the Supreme Court, as

---

363 (5th Cir. 2004) (en banc). The district court, not the jury, must perform the Pickering balancing test, if the jury finds that Cooley was not promoted solely or partly because of his "union activities." See, e.g., Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1202–03 (10th Cir. 2007).

well as our own precedents, we lack jurisdiction to review the conclusion of the second type on interlocutory appeal.[6]

Id. Stated differently, "on interlocutory appeal[,] we lack jurisdiction to challenge the district court's determination regarding the sufficiency of the evidence, that is, whether there is enough summary judgment evidence in the record for a jury to conclude that certain facts are true." Phillips v. City of Victoria, No. 06-40629, 2007 WL 2228340, at *1 (5th Cir. Aug. 2, 2007) (per curiam) (unpublished).

"We do, however, have jurisdiction to review the first type of determination, the purely legal question whether a given course of conduct would be objectively unreasonable in light of clearly established law." Kinney, 367 F.3d at 347. Given this rule, a defendant official may only "claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the . . . standard of 'objective legal reasonableness.'" Behrens v. Pelletier, 516 U.S. 299, 312–13 (1996). "That is, we have jurisdiction only to decide whether the district court erred in concluding as a matter of law that officials are not entitled to qualified immunity on a given set of facts." Kinney, 367 F.3d at 347. "[W]e can review the materiality of any factual disputes, but not their genuineness." Wagner v. Bay City, 227 F.3d 316,

---

[6] We have noted:

Since we lack jurisdiction to review a denial of summary judgment based on the district court's conclusion that fact questions exist regarding whether the defendants engaged in conduct that would clearly violate established law, officials may sometimes be required to proceed to trial even though the ultimate resolution of those factual disputes may show that they are entitled to qualified immunity from liability.

Kinney, 367 F.3d at 346 n.8.

320 (5th Cir. 2000). Any argument not addressed to the first type of determination may not be considered on interlocutory appeal, and an appeal relying on an improperly raised argument should be dismissed. See Connelly v. Tex. Dep't of Criminal Justice, 484 F.3d 343, 346 (5th Cir. 2007).

Here, the only proper issue for appeal is whether Grimm's refusal to promote Cooley solely because of his advocacy in union negotiations——the given course of conduct that the district court deemed to be genuinely disputed[7]——was

---

[7] After examining the summary judgment evidence, the district court found that genuine issues of fact existed and stated specifically that a reasonable jury "could find that Grimm by-passed Cooley solely because of his protected union activities . . . ." Order (Feb. 27, 2007) (emphasis added). Although the district court did not further discuss the facts behind its decision, we summarize the pertinent summary judgment evidence that the district court had before it related to causation.

Grimm, in his motion for summary judgment, expressly asserted that his decision to bypass Cooley was not based on Cooley's union membership or advocacy in union negotiations. R. at 381, 385, 387. Rather, Grimm argued that he refused to promote Cooley because of Cooley's negative and unprofessional attitude, insubordinate behavior toward management, lack of leadership skills, and lack of cooperation with management initiatives. R. at 381. Grimm stated that he based this decision on information provided by Baker, which identified Cooley's refusal to participate in diversity training, ongoing refusal to recognize Sowell's authority, and statements to others that he was distrustful of management as reasons for a promotional bypass. R. at 383–84.

In response, Cooley's summary judgment evidence directly contradicted Grimm's claims that he did not consider Cooley's union activities in bypassing him and that Cooley was negative and disruptive in the workplace. First, Cooley noted that in June 2004, before union negotiations began, Grimm actually offered him a promotion to Captain, which he had to decline for personal reasons. R. at 469. Cooley emphasized that Grimm bypassed him for promotion a few months later, only after union negotiations became contentious. R. at 472. Second, Baker testified that Grimm reacted negatively to Cooley's behavior in the union negotiations. R. at 472. Third, Cooley's evidence revealed that Grimm orchestrated Baker's review of his candidacy by (1) instructing Baker to interview Cooley, the first of any promotional candidate; (2) providing questions for the interview; and (3) making Baker twice revise his memorandum, which recommended that Cooley be bypassed. R. 472–77. Fourth, Cooley provided evidence that Grimm actually did consider Cooley's on-duty union activities, in direct contradiction of Grimm's earlier statement. R. at 475–77. Fifth, Cooley provides depositions and affidavits from Baker, Hart, Pandanell, and Captain Allen McWhirter, which state that they believe Cooley was bypassed because of his role in the union negotiations. R. at 479–87. Sixth, Cooley provides depositions and affidavits from Baker, Hart, Pandanell,

objectively reasonable in light of clearly established law. Grimm, however, has not raised this legal issue. Instead, Grimm focuses on the factual issue of causation, even though the district court already identified a reason for his failure to promote Cooley, and asks this Court to weigh the sufficiency of the evidence supporting that conclusion. Grimm maintains that he refused to promote Cooley because he believed that Cooley's workplace attitude and behavior, possibly influenced in part by his union activities, was disruptive and would lead to an inefficient Fire Department. Grimm also notes that he bypassed Cooley because of the information that Baker brought to his attention, which primarily cited on-duty behavioral problems with Cooley that were not related to his union activities. The district court, however, clearly determined that Cooley's summary judgment evidence was sufficient to create a genuine fact issue regarding whether Grimm retaliated against Cooley for his role in negotiating the successor CBA in bypassing him for promotion or refused to promote Cooley because of his on-duty disruptive attitude and behavior. Because Grimm simply disputes the sufficiency of Cooley's causation evidence, we hold that Grimm has not articulated a legitimate basis for an interlocutory appeal of the denial of qualified immunity.[8] See Kinney, 367 F.3d at 348 (stating

---

McWhirter, O'Neal, Fire Fighter Alex Amieva, and Fire Fighter James Nunez, which state that Cooley did not exhibit negative behavior in the Fire Department during union negotiations. R. at 479–88.

[8] It should be noted that even though Grimm denied that he considered Cooley's advocacy in union negotiations in bypassing him for promotion, he still sought qualified immunity based on his weighing of Cooley's First Amendment rights against the government's interest in the efficient provision of public services under Pickering, 391 U.S. at 568–75. We, however, need not consider the Pickering balancing test in disposing of Grimm's claim of qualified immunity, because Grimm's causation claim obviates the need to do so. See Click v. Copeland, 970 F.2d 106, 112–13 (5th Cir. 1992) (holding that there was no need to consider the Pickering balancing test when the defendant official argued that his actions were not

that we lack the power in this interlocutory appeal to review the district court's decision that a genuine factual dispute exists). Accordingly, we do not have appellate jurisdiction over the district court's interlocutory order.[9]

## III. CONCLUSION

For the forgoing reasons, this appeal is DISMISSED for lack of appellate jurisdiction.

---

motivated by any constitutionally protected activity).

[9] When considering the merits of Cooley's § 1983 claim, the district court must be mindful that whether Cooley's "speech" was entitled to First Amendment protection is a question of law now best analyzed pursuant to Garcetti v. Ceballos, 547 U.S. 410 (2006) and Davis v. McKinney, No. 07-20184, 2008 WL 451769 (5th Cir. Feb. 21, 2008). The ultimate determination will involve evaluating what "union activities" Cooley engaged in and how he engaged in them, as well as their potential impact on the functioning of the Fire Department. See, e.g., Curran v. Cousins, 509 F.3d 36, 44–50 (1st Cir. 2007). Further, Grimm remains able to advance the proposition that he would have declined to promote Cooley "even in the absence of the protected speech." Brammer-Hoelter, 492 F.3d at 1203 (internal quotations omitted).